# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## CARSKADON *et al. v.* TORREYSON *et al.*

Decided November 13, 1880.

In a suit in equity based upon the following deed, which was duly acknowledged by the grantees and duly recorded :

"THIS DEED, made the 8th day of September, 1866, between Angus W. McDonald and Cornelia, his wife, and Arnold S. Trowbridge, of the county of Hampshire, and State of Virginia, of the one part, and James Sheetz, James Carskadon, Isaac H. Carskadon, David Ream, John W. Marshall, Samuel R. Smith, Henry Trout, Garret Vanmeter (of Jacob), and Enos Everett, trustees of the Methodist Episcopal church in South Branch circuit, Baltimore annual conference, appointed by the circuit court of Hampshire county, at September term, 1856, upon the application of Rev. Thomas Hildebrand, preacher in charge of said circuit, of the second part.

" *Whereas,* The said Angus W. McDonald, for the consideration of the sum of $300.00, contracted to sell and convey, with general warranty, to the said Arnold S. Trowbridge, his heirs or assigns, two certain lots in the town of Romney, containing each half an acre of ground, which consideration the said Angus W. McDonald hereby acknowledges to have been paid by the said Arnold S. Trowbridge. *And Whereas,* The said Arnold S. Trowbridge having erected a brick dwelling-house and various other improvements on said two lots, which are known and distinguished in the plat of said town of Romney by the numbers twenty-three and twenty-four (23 and 24) has sold to the said parties of the second part, and their successors in office, the said two lots, with their appurtenances, for the sum of $1,790.00, current money, the receipt whereof he doth hereby acknowledge: Now, THEREFORE, THIS DEED WITNESSETH, That the said parties of the first part, for and in consideration of the premises, and for the further consideration of the sum of $1.00, current money of

1880
Special Term.

Carskadon *et al.*
v.
Torreyson *et al.*

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

the United States, unto them in hand paid by the said parties of the second part at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain and sell, aliene, enfeoff, release and confirm unto the said parties of the second part, trustees as aforesaid, and their successors in office, the said two lots of land situated as aforesaid in the said town of Romney, and known in the plan of said town by the numbers twenty-three and twenty-four, as before mentioned, and containing together an acre of ground, with their appurtenances, to have and to hold all and singular the premises, with the appurtenances, hereby granted unto the said trustees and their successors in office forever, in trust. nevertheless, that they shall *share*, hold the same, and cause the building to be put and kept in repair as a parsonage or place of residence for the use of ministers or preachers of the Methodist Episcopal church in the United States of America, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said church at their general conference in the United States of America; and in further trust and confidence, that they shall at all times forever hereafter permit such ministers and preachers belonging to said church as shall, from time to time, be duly authorized by the general conference of the ministers and preachers of the said Methodist Episcopal church, or shall, by the annual conferences authorized by the said general conferences, be from time to time stationed on the circuit, within the bounds of which said house and lot are situated, to use and occupy the said house and lots as a parsonage or place of residence. But in case the general conference of said church shall make such change in the discipline or constitution of said church at any time hereafter as shall render it necessary or expedient for the annual conference within the the bounds of which said lots are situated to separate from said general conference, then said lots are to be held for the use of the ministers or preachers sent by said annual conference to the circuit within the bounds of which said parsonage is situated. And in further trust and confidence, that as often as any one or more of the trustees hereinbefore mentioned shall die or cease to be a member or members of said church, according to the rules and discipline of the general conference of which the annual conference, within whose bounds said parsonage is situated, belongs, then and in such case it shall be the duty of the stationed minister or preacher, who shall have the pastoral charge of the members of the said church, to call a meeting of the remaining trustees as soon as conveniently may be, and when so met, the said minister or preacher shall proceed to nominate one or more persons to fill the place or places of him or them, whose office or

offices has or have been vacated as aforesaid, provided the person or persons so nominated shall have been one year a member or members of the said church immediately preceding such nomination, and be at least twenty-one years of age; and the said trustees so assembled, shall proceed to elect, and by a majority of votes appoint, the person or persons so nominated to fill such vacancy or vacancies, in order to keep up the number of nine trustees forever ; and in case of an equal number of votes tor and against the said nomination, the station minister or preacher shall have the casting vote. And the said Angus W. McDonald and his heirs warrant the title to the said two lots generally to the extent of $300.00—being the price received for the naked ground. And the said Arnold S. Trowbridge warrants the title generally.

<div style="text-align:right; float:right;">1880<br>Special Term.<br>Carskadon <em>et al.</em><br>v.<br>Torreyson <em>et al.</em></div>

"Witness the following signatures and seals :

> "A. W. McDonald.      [Seal.]
> "A. S. Trowbridge.      [Seal.]
> "Cornelia McDonald.  [Seal.]"

Held :

1. That the trusts specified in said deed are not within the influence or purview of the 8th or 9th sections of the 77th chapter of the Code of Virginia of 1849 and 1860, or of the 1st and 2d sections of chapter 57 of the Code of West Virginia, and that said trusts are inoperative and in effect void from the beginning, because too vague, indefinite and uncertain as to the cestui que trust or cestuis que trust therein mentioned

2. The circuit court of the county of Hampshire having in an ex parte proceeding, had under the ninth section of said chapter seventy-seven of the Code of Virginia of 1860, appointed trustees in that proceeding to fill supposed vacancies in place of a part of the persons in said deed mentioned, such appointment could not confer any right or title in the persons so appointed by the court to the property conveyed by said deed, the trusts specified in said deed being on their face inoperative and in effect void.

Appeal from a decree of the circuit court of the county of Mineral, rendered on the 24th day of December, 1870, in cause in chancery in said court then pending, wherein James Carskadon and others were plaintiffs, and Charles L. Torreyson and others were defendants, allowed upon the petition of said defendants.

Hon. J. T. Hoke, late judge of the fourth judicial circuit, rendered the decree appealed from.

Haymond, Judge, furnishes the following statement of the case :

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

In January, 1866, the plaintiffs filed their bill with order of injunction thereon, which is as follows:

"*To Hon. E. C. Bunker, Judge of the Eleventh Judicial Circuit, in Chancery sitting:*

"Humbly complaining, show unto your honor, your orators, James Carskadon, Isaac H. Carskadon, Henry Trout and Enos Everett, who are the sole surviving and remaining trustees of the Methodist Episcopal church, and the Baltimore annual conference thereof, of certain trustees mentioned in a certain deed of conveyance between Angus W. McDonald and Cornelia, his wife, and Arnold S. Trowbridge, of the one part, and James Sheetz, James Carskadon, Isaac H. Carskadon, David Ream, John W. Marshall, Samuel R. Smith, Henry Trout, Garret Vanmeter (of Jacob) and Enos Everett, then trustees of the Methodist Episcopal church in South Branch circuit, Baltimore annual conference, appointed by the circuit court of Hampshire county, at September term, 1856, upon the application of Rev. Thomas Hildebrand, then preacher in charge of said circuit, of the second part, which deed bears date the 8th day of September, 1856, and is recorded in the recorder's office in said Hampshire county, in book No. 50, page 75, a copy of which said deed is herewith filed, and marked "complainant's exhibit A," and which your orators pray may be made a part of this your orators' bill of complaint; that since the making of said deed, said James Sheetz has withdrawn from said church, as also the said John W. Marshall, both of whom have resigned their trusteeship under said deed; that said David Ream, Samuel R. Smith and Garret Vanmeter (of Jacob) have all departed this life, leaving your orators the only surviving and remaining trustees of the Baltimore annual conference of said Methodist Episcopal church.

"And further your orators show to your Honor, that regularly appointed Baltimore Annual Conferences of said church have been always held in accordance with

the rules and regulations of said church, prior to, up to and ever since the time of making said deed of convey-ance, and from the year 1861 to 1866, inclusive. The said conferences have been so held at the following times and places, viz :

"On ——, 1863, at Staunton ; on ——, 1862, at Baltimore, Md.; on ——, 1866, at Georgetown, D. C.; on ——, 1864, at Baltimore, Md.; on ——, 1865, at Baltimore, Md.; on ——, 1866, at Baltimore, Md.; and that at the Baltimore annual conference, then belonging to the general conference of said Methodist Episcopal church, held in the Eutaw street church, in the city of Baltimore, and State of Maryland, commencing on the 28th day of February, 1866, continuing to the 6th day of March, 1866, inclusive, said annual conference being then and there presided over by Bishop Levi Scott, a duly elected and constituted Bishop of said Methodist Episcopal church, properly authorized and qualified to preside as such bishop in said annual conference, the Reverend George Crossfield, who was then and there a member of said conference, who by said bishop, at said annual conference so held in the Eutaw street church as aforesaid, was appointed preacher in charge of the South Branch Circuit, in the Winchester district, said district being within the bounds of said conference, and was accordingly stationed at said South Branch circuit as such preacher in charge as aforesaid ; and that under and by virtue of said appointment, said Reverend George Crossfield *thereupon* proceeded to Romney, Hampshire county, West Virginia, to assume the duties devolving upon him as such preacher in charge of said circuit, and did then and there, to wit, on the 27th day of March, 1866, arrive at Romney, in said county, it being within the bounds of said circuit, and the place where the parsonage-house and lots numbers twenty-three and twenty-four, in said town of Romney, was then and now is situated in and for said circuit, and belonging to said church, and the legal title to which is vested in and held in trust for said Metho-

1880
Special Term.

Carskadon *et al.*
v.
Torreyson *et al.*

dist Episcopal Church by said trustees, and did then and there, as such preacher in charge as aforesaid, call a meeting of the surviving and remaining trustees, and thereupon did hold a meeting of the trustees of said church that were then remaining and surviving in said circuit, and by and with the consent and under the direction of James Carskadon, Isaac H. Carskadon, Henry Trout and Enos Everett, who were then and there the only surviving and remaining trustees of said church in said circuit, did move into and take possession of said parsonage-house as such preacher in charge of said circuit, and having so taken possession of and moved into said parsonage-house, the said Rev. George Crossfield, having previously duly notified all of said trustees that were then remaining and surviving as aforesaid, did then and there proceed to organize the meeting of said trustees for the purpose of nominating persons to fill the places of such former trustees of said church, whose offices as such had been and continued to be and then were vacated; and thereupon the said Rev. George Crossfield, as such preacher in charge as aforesaid, did then and there nominate James McDonald as one of said trustees, in place of James Sheetz, who had withdrawn from said church, William T. Cookus, as trustee in the place of John W. Marshall, who also had withdrawn from said church, Tobias Baker, as trustee in the place of Daniel Ream, who then had departed this life, Henry Head, as trustee in the place of Garret Vanmeter, who also had then departed this life, and William Jenkins, trustee in the place of Samuel R. Smith, who also had then departed this life, and that thereupon the said remaining and surviving trustees, so as aforesaid assembled, did proceed to elect, and by a majority of the votes of the said trustees, appointed the several persons so nominated to fill such vacancies so as to keep up the number of nine trustees forever; all of said trustees so nominated and elected having been for one year then next immediately pre-

ceding such nomination members of said Methodist Episcopal church and over twenty-one years of age.

"And further your orators show to your Honor that in accordance with certain provisions in said deed contained, and in order to act in conformity to the statute of the State of West Virginia in this relation, a petition was prepared, signed by the proper authorities of the said Methodist Episcopal church, and of the congregation of which said Rev. George Crossfield was then the pastor and preacher in charge as aforesaid, to be presented as an application to the circuit court of Hampshire county, West Virginia, at the May term thereof, 1866, for the purpose of obtaining the appointment by said court of the several persons named herein above as trustees to fill the several vacancies aforesaid; but when said application was about to be made and presented to said circuit court at said May term, 1866, your orators, to their utter surprise, there for the first time learned that one C. L. Torreyson had then already made and presented to said court a petition and application wherein he, said Torreyson, styled himself and claimed to be 'preacher in charge of the South Branch circuit of the Baltimore annual conference of the Methodist Episcopal church, wherein among other things said Torreyson made application to said court to appoint Samuel Lopp, John I. Combs, Isaac V. Heiskell and Solomon Vanmeter in the places of former trustees of said South Branch circuit of the Baltimore annual conference of said Methodist Episcopal church, whose places were then vacant,' stating also in said petition and application that said last named persons were then all members of said church and congregation in full communion and good standing. A copy of which said petition is herewith filed and marked complainant's 'exhibit B,' and which your orators pray may be made a part of this your orators' bill of complaint.

"And further your orators show to your Honor, that under and by virtue of said petition and application said Torreyson obtained from said court, at said term, an order

1880
Special Term.

Carskadon et al.
v.
Torreyson et al

appointing said Samuel Lopp, John J. Combs, Isaac N. Heiskell and Solomon Vanmeter trustees in said deed and for said property, in the places of said James Sheetz, David Ream, Samuel R. Smith and Garret Vanmeter (of Jacob). A copy of which said order is herewith filed and marked plaintiffs' "exhibit E," and which also your orators pray may be made a part of this your orators' bill.

"And further your orators show to your Honor, that the affidavit of John W. Marshall was also filed with said petition to support said petition and application, but that said affidavit, as your Honor will readily perceive by inspecting the same, in no wise supports the said petition and application of said Torreyson, nor does it prove the truth thereof, nor does it in any measure prove that said Torreyson was then the preacher in charge of the South Branch circuit of the Baltimore annual conference of the Methodist Episcopal church. A copy of which said affidavit is herewith filed and marked complainants' 'exhibit D,' and which your orators pray may be made a part of this your orators' bill of complaint.

"And further your orators show to your Honor, that said Torreyson was not at the time of presenting his said petition and application as aforesaid to said court, nor is he now, the preacher in charge of the South Branch circuit of the Baltimore annual conference of the Methodist Episcopal church, but that the said Rev. G. Crossfield is the preacher in charge of said circuit, properly and legally appointed and stationed as aforesaid, and by competent authority, and that said Torreyson made and presented said petition to said court without any right or authority whatever so to do.

"And further your orators show to your Honor, that said Torreyson was not at the time of making and presenting his said petition and application to said court, nor is he now, a member of said Baltimore annual conference, but that he, said Torreyson, did in and by his said petition and application falsely assume the name

and style of 'the preacher in charge of the South Branch circuit of the said Baltimore annual conference.'

"And further your orators show to your Honor, that the said C. L. Torreyson and the said John W. Marshall and Samuel Lopp, John J. Combs, Isaac N. Heiskell and Solomon Vanmeter are now threatening, and are about to dispossess and eject the said Rev. G. Crossfield from said parsonage-house under and by virtue of the said order of said court, and whom your orators pray may be made parties defendant to this your orators' bill of complaint.

"And further your orators show to your Honor, that the said C. L. Torreyson, John W. Marshall, Samuel Lopp, John J. Combs, Isaac N. Heiskell and Solomon Vanmeter are combining and confederating together with one O. P. Wingman (whom also your orators pray may be made a party defendant to this your orators' bill of complaint) for the purpose of defeating the provisions, object and end of said deed of conveyance; and that said O. P. Wingman is now, together with his family, occupying a portion of said parsonage house under the direction and encouragement of the said Torreyson and the said John W. Marshall, Samuel Lopp, John J. Combs, Isaac N. Heiskell and Solomon Vanmeter, and for the purpose of exercising authority and dominion over said parsonage-house, under and by virtue of said order of said court, and to exclude your orators' just and equitable rights in the premises, and to prevent your orators from carrying into effect the trust confided to them in and by said deed.

"And further your orators show to your Honor, that your orators knew nothing of the said petition and application of said Torreyson prior to the time of said order of said court having been made by said court, and totally disclaim any participation in the same, but on the contrary protest against it.

"And further your orators show to your Honor, that unless an injunction issue forthwith enjoining and re-

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

straining the said defendants, and every one of them, from acting as trustees under said deed, or in any manner under or by virtue of said order of said court, and from in any manner further interfering with said parsonage-house, or the real estate named in said deed, or any property named in said deed, until the further order of this court, irremediable loss and injury will accrue to your orators in the premises.

"In tender consideration whereof, and forasmuch as your orators are remediless in the premises according to the strict rules of the common law, and can only have adequate relief in a court of equity where matters of this kind are purely cognizable, and your orators, therefore, pray that said order of said court· so made at the May term of said circuit court of said Hampshire county, under and by reason of the said petition and application of the said C. L. Torreyson as aforesaid, may be by this court set aside, annulled and decreed to be forever void and held for naught, and that an injunction may issue from this honorable court enjoining and restraining the said defendants, and every of them, their agents and attorneys, from acting as trustees under said deed, or in any manner under or by virtue of said order of said court, and from in any manner further interfering with said parsonage-house or the real estate named in said deed, or any property named in said deed, until the further order of this court, and that the said defendants, and every of them, may true and perfect answer make to all and singular the matters and things, allegations and charges in this bill contained, the same as if specially interrogated, and for such other, further and general relief as to this court may seem meet, and as may be agreeable to equity and good conscience, and may *spa.* issue. And as in duty bound, your orators will ever pray."

It appears that on the 7th day of January, 1866, E. C. Bunker, judge of the eleventh circuit, granted an injunction upon said bill restraining the defendants, their

agents and attorneys, from exercising and discharging the duties of trustees of the Methodist Episcopal church in South Branch circuit, of Baltimore conference, without requiring bond and security.

Exhibit "A" mentioned in the bill and filed therewith is as follows, viz :

" *This deed,* made the 8th day of September, 1856, between Angus W. McDonald and Cornelia, his wife, and Arnold Trowbridge, of the county of Hampshire and State of Virginia, of the one part, and James Sheetz, James Carskadon, Isaac H. Carskadon, David Ream, John W. Marshall, Samuel R. Smith, Henry Trout, Garret Vanmeter (of Jacob) and Enos Everett, trustees of the Methodist Episcopal church, in South Branch circuit, Baltimore annual conference, appointed by the circuit court of Hampshire county, at September term, 1856, upon the application of Rev. Thomas Hildebrand, preacher in charge of said circuit, of the second part.

" Whereas, the said Angus W. McDonald, for the consideration of the sum of $300.00, contracted to sell and convey, with general warranty, to the said Arnold S. Trowbridge, his heirs or assigns, two certain lots in the town of Romney, containing each a half an acre of ground, which consideration the said Angus W. McDonald hereby acknowledges to have been paid by the said Arnold S. Trowbridge. And whereas, the said Arnold S. Trowbridge, having erected a brick dwelling house and various other improvements on said two lots, which are known and distinguished on the plat of said town of Romney by the numbers twenty-three and twenty-four (23 and 24), has sold to the said parties of the second part, and their successors in office, the said two lots, with their appurtenances, for the sum of $1,790.00, current money, the receipt whereof he doth hereby acknowledge : Now, therefore, this deed witnesseth, that the said parties of the first part for and in consideration of the premises, and for the further consideration of the sum of $1.00, current money of the United States, unto them in

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

hand paid by the said parties of the second part at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain and sell, aliene, enfeoff, release and confirm unto the said parties of the second part, trustees as aforesaid, and their successors in office, the said two lots of land, situated as aforesaid in the said town of Romney, and known in the plan of said town by the numbers twenty-three and twenty-four, as before mentioned, and containing together one acre of ground, with their appurtenances, to have and to hold all and singular the premises, with the appurtenances hereby granted, unto the said trustees and their successors in office forever, in trust, nevertheless, that they shall hold the same, and cause the buildings to be put and kept in repair as a parsonage or place of residence for the use of the ministers or preachers of the Methodist Episcopal church in the United States of America, according to the rule and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said church, at their general conference in the United States of America, and in further trust and confidence that they shall at all times forever hereafter permit such ministers and preachers belonging to said church as shall from time to time be duly authorized by the general conferences of the ministers and preachers of said Methodist Episcopal church, or shall by the annual conferences, authorized by the said general conference, be from time to time stationed on the circuit, within the bounds of which said house and lots are situated, to use and occupy said house and lots as a parsonage or place of residence; but in case the general conference of said church shall make such change in the discipline or constitution of said church at any time hereafter as shall render it *necessary* or *expedient* for the annual conference, within the bounds of which said lots are situate, to separate from said general conference, then said lots are to be held for the use of the ministers

or preachers sent by said annual conference to the circuit within the bounds of which said parsonage is situated; and in further trust and confidence that as often as any one or more of the trustees hereinbefore mentioned shall die or cease to be a member or members of said church, according to the rules and discipline of the general conference of which the annual conference within whose bounds said parsonage is situated belongs, then and in such case, it shall be the duty of the stationed minister or preacher who shall have the pastoral charge of the members of the said church, to call a meeting of the remaining trustees as soon as conveniently may be, and when so met, the said minister or preacher shall proceed to nominate one or more persons to fill the place or places of him or them, whose office or offices has or have been vacated as aforesaid, provided the person or persons so nominated shall have been one year a member or members of the said church immediately preceding such nomination, and be at least twenty one years of age; and the said trustees so assembled shall proceed to elect, and by a majority of votes appoint the person or persons so nominated to fill such vacancy or vacancies, in order to keep up the number of nine trustees forever, and in case of an equal number of votes for and against the said nomination, the stationed minister or preacher shall have the casting vote. And the said Angus W. McDonald and his heirs warrant the title to the said two lots generally, to the extent of $300.00, being the price received for the naked ground. And the said Arnold S. Trowbridge warrants the title generally.

"Witness the following signatures and seals:

"A. W. McDonald.    [Seal.]
"A. S. Trowbridge.    [Seal.]
"Cornelia McDonald. [Seal.]"

"Virginia, Hampshire County, to wit:

"I, Robert M. Powell, a justice of the peace in and for the county aforesaid, in the State of Virginia, do

1880
Special Term.
―――――――
Carskadon et al.
v.
Torreyson et al.

hereby certify that Angus W. McDonald and Arnold L. Trowbridge, whose names are signed to the writing above, bearing date on the 8th day of September, 1856, have severally acknowledged the same before me in my county aforesaid.

    " Given under my hand this 9th day September, 1856.

                  R. M. POWELL, *J. P.*"

" VIRGINIA, CORPORATION OF WINCHESTER,

                *County of Frederick, to wit:*

We, Joseph H. Sherrard and W. G. Russell, justices of the peace for the corporation aforesaid, do certify hereby that Cornelia McDonald, wife of Angus W. McDonald, whose names are signed to the above writing, bearing date the 8th day of September, A. D. 1856, personally appeared before us, in our corporation aforesaid, and being examined by us privily and apart from her said husband, and having the writing aforesaid fully explained to her, she, the said Cornelia, acknowledged she had willingly executed the same, and does not wish to retract it.

    " Given under our hands this 14th day of January, A. D. 1858.

                " J. H. SHERRARD,

                " W. G. RUSSELL."

" HAMPSHIRE COUNTY, TO WIT:

    " *Be it remembered,* That on the 22d day of February, 1858, this deed was presented in the Clerk's office, and with the certificates thereto annexed, admitted to record.

    " Teste :         J. B. WHITE, *C. H. C.*"

Exhibit "B" filed with plaintiff's bill and therein mentioned is as follows, viz :

"*To the Honorable Edward C. Bunker, Judge of the Circuit Court of Hampshire County:*

"The petition and application of the Rev. Charles L. Torreyson, preacher in charge of the South Branch circuit of the Baltimore annual conference of the Metho-

dist Episcopal church, respectfully represents that the town of Romney, in said county of Hampshire, is within the bounds of said South Branch circuit, and under the charge of your petitioner, and he is the proper authority of the congregation of said church at Romney to make the application; that heretofore, to wit: On the 8th day of September, 1856, Angus W. McDonald, and Cornelia, his wife, and A. S. Trowbridge, by deed dated on said day and duly recorded in the recorder's office of said county, in deed book No. 50, page 75, conveyed to James Sheetz, James Carskadon, Isaac H. Carskadon, David Ream, John W. Marshall, Samuel R. Smith, Henry Trout and Garret Vanmeter, eight in number, trustees of the Methodist Episcopal church, South Branch circuit of Baltimore annual conference, appointed by the circuit court of Hampshire county, at September term, 1856, on the application of Rev. Thomas Hildebrand, the preacher in charge of said circuit, two lots, No. twenty-three and twenty-four in the said town of Romney, with building thereon for a parsonage or residence of the preacher.

" Your petitioner further showeth to your Honor, that since the execution of said deed the following vacancies have occured in the trusteeship of said deed, namely: James Sheetz has withdrawn from said church and resigned his trusteeship; David Ream, Samuel R. Smith and Garret Vanmeter (of Jacob) have all departed this life.

" In tender consideration whereof your petitioner, the proper authority aforesaid, hereby makes application to said court to appoint Samuel Lopp, John J. Combs, Isaac N. Heiskel and Solomon Vanmeter in the places of said former trustees, whose places are now vacant, respectively in the order in which they are herein named, the said last named persons being all members of said church and congregation, in full communion and good standing; and your petitioner will ever pray, &c."

1880
Special Term.

Carskadon *et al.*
v.
Torreyson *et al.*

1880
Special Term.

Carskadon *et al.*
v.
Torreyson *et al.*

The order of the circuit court made upon said petition is as follows:

"In the matter of the petition of Charles L. Torreyson, preacher in charge of the Romney congregation of the South Branch circuit of the Methodist Episcopal church, making an application for the appointment of new trustees in the deed for the parsonage from Angus W. McDonald, and in said petition mentioned, in the places of certain trustees therein named:

"The said matter came on to be heard this —— day of May, 1866, on said petition, and exhibits and affidavits filed, and was argued by counsel. On consideration whereof, the court does hereby appoint Samuel Lopp, John J. Combs, Isaac N. Heiskell and Solomon Vanmeter, trustees in said deed and for said property in the places of the former trustees, viz: James Sheetz, David Ream, Samuel R. Smith and Garret Vanmeter (of Jacob); the first named four in the order in which they are named respectively."

On the 14th day of September, 1866, it seems, the cause came on to be heard on the bill and demurrer thereto, and the court sustained the demurrer as to the non-joinder of James Sheetz, one of the original trustees, and granted leave to the plaintiffs to amend their bill by making James Sheetz a party without prejudice to the injunction awarded in the cause. It does not appear from the record, as it is before us, that said James Sheetz was ever made a party to the cause; but it does appear, that the defendants by their counsel, by a writing filed in the cause, agreed that an amended bill need not be filed to make James Sheetz a party, but that the cause should be tried as if said bill had been filed, and said Sheetz made a party. This writing is dated January 4, 1868.

Defendants filed their answer to plaintiff's bill, which is as follows:

"*The joint and several answer of Charles L. Torreyson, John W. Marshall, Samuel Lopp, John J. Combs, Isaac N. Heiskell, Solomon Vanmeter and O. P. Wingman to a bill in chancery exhibited against them in the circuit court of Hampshire county, in the name of James Carskadon, Isaac H. Carskadon, Henry Trout and Enos Everett as complainants :*

"These respondents, saving and reserving to themselves all manner of exceptions to the many errors and imperfections of said bill, after demurring thereto, for answer to the same, say it is true that Angus W. McDonald and others, on the 8th day of September, 1856, executed the deed in the bill mentioned for lots numbers twenty-three and twenty-four, in the town of Romney, to James Sheetz, James Carskadon, David Ream, John W. Marshall, Samuel R. Smith, Henry Trout, Garrett Vanmeter (of Jacob) and Enos Everett, trustees, to hold the same as a parsonage or place of residence for ministers, as provided for in said deed, and the said deed, after providing in the terms and form prescribed in the discipline of the Methodist Episcopal church of the United States of America, as to the trust on which said parsonage should be held, provides in these words, to wit : ' But in case the general conference of said church shall make such change in the discipline or constitution of said church at any time hereafter as shall render it necessary or expedient for the annual conference, in the bounds of which said lots are situated, to separate from said general conference, the said lots are to be held for the use of the minister or preacher sent by said annual conference to the circuit within the bounds of which said parsonage is situated.

" Respondents here feel it important to refer to some facts now well known in the history of said church as well as the country. In the year 1844 the said Methodist Episcopal church in the United States of America, owing to some difficulties growing out of the subject of slavery, thought it expedient and proper to divide itself,

and did divide itself in accordance with ' *a plan of sepa-ration,*' which is referred to and made a part of this answer ; that the Baltimore annual conference, which then embraced in its bounds a considerable section of the State of Virginia, including the county of Hampshire, and of course the South Branch circuit and the town of Romney at that time remained with and adhered to the church (which to distinguish it from the southern wing, we will call church north) north ; but the said Baltimore conference again and again, by unanimous vote, determined and declared it would not hold connection with any ecclesiastical body that made non-slave-holding a condition of membership in the church, or that declared slavery to be a sin, and said Baltimore conference so held, remained and adhered, with the avowed understanding that the then existing status of church legislation touching slavery should not be disturbed ; but the said general conference in May, 1860, at Buffalo, did introduce into the discipline or constitution of said church a new chapter, declaring slave-holding to be contrary to the law of God and a sin, thereby making non-slaveholding a test of membership in the church ; that the said Baltimore annual conference at its next annual meeting, held at Staunton, Va., in March, 1867, true to its position ever since 1844, declared itself separate from the jurisdiction of the said general conference, thus complying with the condition and meeting the contingency provided for in said deed.   This was done with but one dissenting vote, and the dissentive so qualified his dissent by explanation as to almost agree with the majority. It is true there was a minority who declined to vote on either side and protested.   The disciplines as published and received of said churches, both north and south, and the register publishing the proceedings of said church in 1844, and of said bodies since, are filed herewith as parts of this answer.   That the said majority of the Baltimore annual conference thus separating from the general conference, claimed to be, notwithstanding its action afore-

said, an integral part of the Methodist Episcopal church, but repudiating the said new chapter as unconstitutional, made no change of faith, doctrine or discipline, but doctrinally, morally, ecclesiastically and economically, it continued to be the same Baltimore annual conference as before, save its connection with the general conference and mere verbiage; that the said Baltimore annual conference, so separated from the said general conference, has ever since 1861 held its annual meetings under its old name, and in the spring of 1866, while sitting at Alexandria, by its proper and regular authorities, deputed the defendant, the said Rev. Charles L. Torreyson, a member of said conference, as the traveling preacher in charge of the said South Branch circuit, and he was duly received as such by the congregation in said circuit, and by their official members; and it is true that said Charles L. Torreyson, as such preacher in charge, made the application referred to in the bill to this court at its May term last, for the appointment of additional trustees in the places of Samuel R. Smith, David Ream and Garret Vanmeter, who were then dead, and in the place of James Sheetz, who had withdrawn from the Methodist Episcopal church and joined the Presbyterian church, and given up his trusteeship. It is also true that John W. Marshall, who is a steward and officer of said congregation, whose special duty it is to attend to the temporalities of the church, did join and unite with said preacher in the petition to the court. Respondents refer to an office copy of the record in the matter of said petition, filed herewith as part hereof.

"Respondents deny that the complainants are the only surviving and remaining trustees appointed originally in said deed of conveyance, and they also deny that John W. Marshall, one of said original trustees, has resigned his trusteeship or withdrawn from said church.

"In relation to the allegations in the bill concerning what has been called the minority Baltimore conference, respondents beg leave to say that a small minority of the

1880
Special Term.
——————
Carskadon *et al.*
v.
Torreyson *et al.*

Baltimore annual conference, they believe, did go off and assemble in the city of Baltimore, Md., in 1862, and assumed to act as the annual Baltimore conference; but respondents are not advised, nor do they admit, but deny, that that body was or could justly or legally be the Baltimore annual conference. Respondents are willing to admit that a minority of the members of said Baltimore annual conference aforesaid, assuming to act as the Baltimore annual conference, did meet at the times and places mentioned in the bill. It is true that in the spring of 1866—the exact time not recollected—a certain George Crossfield, so calling himself, appeared in the town of Romney, claiming to have been deputed by the Baltimore annual conference (the said minority conference, it is supposed,) as preacher in charge of the South Branch circuit, but he was never acknowledged and received as such by the authorities of the circuit, or the congregation at Romney, nor any other congregation in the circuit, as respondents know, and whether said Crossfield was a member of said minority conference, and by it deputed to the charge of this circuit, these respondents do not know or even care, except for the annoyance he has given them. And as to the allegation in relation to said George Crossfield, that he, as such preacher in charge, did call a meeting of the surviving and remaining trustees, and held a meeting of them, and by the consent and under the direction of James Carskadon, Isaac Carskadon, Henry Trout and Enos Everett, who were then and there the only surviving and remaining trustees of said church in said circuit, did move into and take possession of said parsonage-house as such preacher in charge of said circuit, and having so taken possession of and moved into said parsonage-house, the said Rev. George Crossfield, having previously duly notified all of said trustees that were remaining and surviving as aforesaid, did then and there proceed to organize the meeting of said trustees for the purpose of nominating persons to fill the places of such

former trustees of said church whose offices had been, and continued to be, and were then vacated, &c., respondents would say they can't admit it, in whole or in part, but deny the same in manner and form as alleged; and, substantially, they believe the whole allegation to be untrue. The said trustees were not all notified of any meeting called by said George Crossfield at any time. It is true, as the defendants are informed since the occurrence, and defendant Wingman, who was present knows, that when they pretended to nominate and appoint trustees as stated in the bill to fill vacancies, there were present of said trustees only the two Carskadons, and that there was no majority of the remaining and surviving trustees present on the occasion, and the pretence of any regular appointment of trustees on their part to fill vacancies in the trusteeship under the deed aforesaid is untrue.

"As to the several averments in relation to the pretended trustees appointed by Mr. Crossfield and his trustees' meeting, respondents say they admit them all to be twenty-one years of age; that James McDonald, Wm. T. Cookus and Tobias Baker were members of the Methodist Episcopal church more than twelve months prior to their pretended appointment as trustees, but of them they are informed that Tobias Baker repudiated Mr. Crossfield, and adheres to Mr. Torreyson and his views of the matter in hand; that William Cookus adheres to Mr. Crossfield it is admitted, and he is the only male member of the Romney congregation who does, while Mr. McDonald is not committed to him, and of late has entirely abandoned him as we are advised. As to James Carskadon, they state that about 1862, he removed to Illinois, and is not, according to the rules of the church, a member thereof; and Wm. Jenkins has removed out of the South Branch circuit, and has ceased to be a member of any church in it. And as to George Crossfield's having taken possession and moved into said parsonage, respondents, after denying the allegations of

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

1880
Special Term.
Carskadon et al.
v.
Torreyson et al.

the bill and his possession, would say that when Mr. Crossfield came to Romney, in the spring of 1866, he found the defendant, O. P. Wingman and family in possession of said property for upwards of six years last past; that Mr. Wingman for a number of years has been a regular preacher of the Methodist Episcopal church, but during the war he was cut off from all church connection, though he remained during the whole time at his post, and continued to preach to his people in the Presbyterian church, the Methodist church at Romney having been destroyed by the army during the war, and the parsonage would most likely have shared the same fate had not Mr. Wingman remained in possession of it and protected it. He still holds to his faith and his church, though in fact, in the disturbances of the times, he is not fully committed to either division of the church, and by the sufferance of the trustees and the sanction of the congregation, he continued to live in the parsonage and preach to his people. Under these circumstances, Mr. Crossfield having no house to take his family into, applied to Mr. Wingman, and the house being large enough to accommodate both, Mr. Wingman, in a spirit of kindness and hospitality, allowed Mr. Crossfield and family to enter and occupy a part of said parsonage, not thereby intending to surrender his possession and right by any means, and in this manner, and not otherwise as respondents believe, did George Crossfield get into the occupancy of any part of said parsonage, except that he has since been somewhat intrusive, and pretended to more than he is entitled to.

" Respondents know nothing of any petition prepared, signed by the proper authorities of said Methodist Episcopal church, and of the congregation of which George Crossfield was the pastor and preacher in charge, to be presented as an application to this court at its May term, 1866, for the purpose of having trustees appointed, as alleged in the bill; if any such was prepared, none such was presented to the court as respondents believe, al-

though before the end of the term, while the matter of Mr. Torreyson's petition was still in the breast of the court, subject to revision, the said Crossfield and Carskadon well knew that the petition for the appointment of the respondents was before the court ; and when the bill speaks of the congregation of which said Crossfield was the pastor and preacher, respondents do not understand what he means as applied to the South Branch circuit or the town of Romney, as it is well known he has not received the countenance even of more than two or three members of the Methodist Episcopal church at Romney.

"Respondents file herewith a list of the members of the Methodist Episcopal church in March, 1866, in the said South Branch circuit, showing the members in each congregation composing the circuit. This list is obtained from Rev. O. P. Wingman, the last pastor and preacher in charge of said circuit · up to that date, and from the class-books, and is believed to be the most accurate that can be obtained. Those marked " removed " are not now regularly members, they having lost membership by removal without certificates, under the rules of the church. Those marked with a cross thus (*), adhere to Crossfield, being nineteen in number against one hundred and seventy-seven who adhere to Mr. Torreyson, the whole number being one hundred and ninety-six. So far as the bill refers to the terms of the petition of Mr. Torreyson, the order of court and proof in the case, respondents refer to the office copy of the record in said case, filed as an exhibit herewith, as an answer.

" Respondents claim that the petition of said Torreyson was from authority, good under the statute, especially in conjunction with the prayer of John W. Marshall, the steward of said congregation and circuit, as they claim that under the statute of this State, the property is vested in the local congregation. Now respondents in this connection aver that the purchaser of said parsonage and founder of the charity were with scarcely an exception, and continue, if still living, adherents to the majority

Baltimore annual conference; and if their feelings, desires or sentiments are entitled to respect in this matter, the use of the property would be accorded to those who adhere to said majority Baltimore conference, and not to the Baltimore conference north, who are strangers to their feelings, and by their new unconstitutional rules would unchurch and send to perdition them and their fathers before them.

" Respondents further show that the congregation at Romney, with but two exceptions, adhered to Mr. Torreyson as their pastor and preacher in charge, and utterly repudiated the pretensions of Mr. Crossfield and his minority Baltimore conference. Mr. Crossfield can't be said with propriety to have any congregation at Romney, or in the South Branch circuit; and as the statute only allows such deeds to be made for the use of local congregations, respondents claim that they are the proper parties to have the control of said property, and Mr. Torreyson ought in equity and good conscience to be installed in the possession.

" Respondents, in express contradiction of the allegation of the bill, say that the said Charles L. Torreyson was at the time of presenting his said petition and application to the court as aforesaid, and at the time of the filing of the bill, and still is, preacher in charge of the South Branch circuit of the Baltimore annual conference of the Methodist Episcopal church of the United States of America, for that no longer existed as a body intact since 1844, but of that part of said church which the South Branch circuit and the congregation of that church at Romney adhered, and which is under the superintendence of the Baltimore annual conference which convened at Alexandria in 1866; and they expressly deny the charge in the bill, that the allegation in the petition aforesaid that he was the preacher in chage of the South Branch conference of the 'Baltimore annual conference' was falsely made, or that any allegation in said petition was false or untrue, (admitting the mere

clerical and immaterial error or omission in not stating Enos Everett to be one of the trustees in the deed, but error that was set straight by making an exhibit of the deed itself). It would have been a vain error in the petitioner to have attempted any false statements in said petition, even if such could have possibly been desirable, as it is well known that his Honor, the judge of the court, then presiding was well acquainted with the state of said Methodist Episcopal church, and the exact position in which Mr. Torreyson stood in the same.

"Respondents further show that the said James Carskadon, Isaac Carskadon and Henry Trout are non-residents of Hampshire county, and it is submitted to court to remove them, and to appoint some proper persons living in the county to act in their places. As to Enos Everett, he is by some mistake made a party complainant in the bill, when, in fact, he has always sympathized and been acting with the defendants, and they are informed and believe he desires the bill as to him to be dismissed. Respondents deny that they threatened to dispossess and eject said Rev. G. Crossfield from said parsonage-house under and by virtue of said order of said court, as charged in the bill, but it is true that they admitted that owing to his arrogant and presumptuous claims, and aggressive and intrusive conduct, they would before long have made an effort to get rid of him. Respondents deny all fraud, combinations, and without that, &c., and pray that the injunction granted to complainants be dissolved, and they, said defendants, dismissed with their reasonable costs and charges in this behalf most wrongfully sustained.

"SAMUEL LOPP,
"JOHN W. MARSHALL,
"JOHN J. COMBS.
"ISAAC N. HEISKELL.
"SOLOMON VANMETER, JR.

"C. L. TORREYSON,
"O. P. WINGMAN."

*1880 Special Term.*

*Carskadon et al.*
*v.*
*Torreyson et al.*

This answer as well as the bill is verified by affidavit. The said James Sheetz filed a petition, which is as follows, viz:

"*To the Hon. E. C. Bunker, Judge of the Circuit Court of Hampshire county:*

"Your petitioner, James Sheetz, respectfully represents that he is ordered to be made a party to a suit in chancery of Carskadon — Torreyson, and depending in said court without his knowledge, approbation or consent; that he has no interest of any sort in said suit; that he does not consider himself in any way connected with it, either as trustee or otherwise; that he has long since quit the church named in said bill of complainants, and is not now nor was he at the commencement of said suit a member of any branch of said Methodist church, he being then and now a member of the Presbyterian church, and he refers to the deed of trust mentioned to show he has no interest therein, and should not be a party. Your petitioner, therefore, asks that said order may be rescinded and may be dismissed as to him.

"JAS. SHEETZ."

It appears by an agreement in writing signed by the counsel of the plaintiffs and defendants, that the plaintiffs and defendants by their counsel agreed, that the records, papers, books, pamphlets and documents pertaining to matters relevant to the cause should be read in evidence on the trial thereof, subject however to all legal objections to the matter contained therein; and the court certifies in substance, that the pamphlets and documents mentioned in said agreement of parties by their counsel were read by the court on the hearing of the cause, viz: The annual register of the Baltimore conference which met in Winchester in 1860, and 1861; the annual register of the body styling itself the Baltimore conference of the Methodist Episcopal church, which met at Churchville, Augusta county, Virginia, 1863, at Bridgewater, Rockingham county, Virginia, 1864, and at Alexandria;

the annual register of the body styling itself the Balti-
timore conference of the Methodist Episcopal church,
which met at Baltimore in 1862, and of the same body
for the years 1863, 1864, 1865 and 1866; the journals of
the annual conference of the Methodist Episcopal church
for the years from 1840 to 1860 inclusive; the book of
discipline of said church prior to 1860; and the book of
discipline of said church containing what is known as
the new chapter on slavery.

It was further agreed by counsel of appellants and ap-
pellees by a writing signed by them and filed in this
Court, "that so much of the records, books, pamphlets
or printed document or documents as pertain to matters
relevant to this cause, as may be contained in the print-
ed register or journals of what is known as the general
conference from 1840 to 1866 inclusive—of the Balti-
more conference from 1840 to 1861 inclusive—of the con-
ference which met in Baltimore at Light street in 1862,
and of the meetings thereof subsequently—of the confer-
ences which met in Harrisonburg in 1862, Churchville
1863, Bridgewater 1864, and Salem in 1865, and Alex-
andria in 1866—of the convention which met at Louis-
ville in 1845—the doctrines and discipline of the Meth-
odist Episcopal church prior and inclusive of 1860—the
book of doctrines and discipline of the Methodist Epis-
copal church 1864," and also the paper writing marked
" B," filed in this cause, purporting to be an abstract of
the record, may be referred to by the counsel and court
as part of the record in this cause.

Several depositions were taken and filed by plaintiffs
and defendants to sustain the issues in the cause; but I
deem it unnecessary to do more now than to refer to the
fact, as under the view I take of the case I deem it un-
necessary to do more at this place. I may however re-
fer to matters of fact proven in the cause, so far as I
deem it proper or necessary. The books, pamphlets, doc-
uments, registers and disciplines referred to in said agree-

ment were before this Court and read, as far as relevant, and considered in deciding the cause.

A petition of Rev. George Crossfield appears in the record, which is as follows, viz:

"STATE OF WEST VIRGINIA, HAMPSHIRE COUNTY, SCT:

*To the Honorable Edward C. Bunker, Judge of the Circuit Court of Hampshire county, and of the Eleventh Judicial Circuit of West Virginia :*

" The petition and application of the Rev. George Crossfield, preacher in charge of the South Branch circuit of Baltimore annual conference of the Methodist Episcopal church, respectfully represents that the town of Romney, in said county of Hampshire, is within the bounds of the said South Branch circuit, and under the pastoral charge of your petitioner as aforesaid, and your petitioner is the proper authority of the congregation, or rather society of said church, at Romney, to make this application ; that heretofore, to wit, on the 8th day of September, 1856, Angus W. McDonald and Cornelia, his wife, and A. S. Trowbridge, by deed, dated on said day and duly recorded in the recorder's office of said county in deed book No. 50, page 75, conveyed to James Sheetz, James Carskadon, Isaac Carskadon, David Ream, John W. Marshall, Samuel R. Smith, Henry Trout and Garret Vanmeter (of Jacob) and Enos Everett, trustees of the Methodist Episcopal church, in South Branch circuit of Baltimore annual conference, appointed by the circuit court of Hampshire county, at September term, 1856, on the application of the Rev. Thomas Hildebrand, the preacher in charge of said circuit, two lots numbered twenty-three and twenty-four, in the said town of Romney, with buildings thereon, for a parsonage or residence of the preacher. Your petitioner further showeth that since the execution of said deed the following vacancies have occurred in the trusteeship of said deed : James Sheetz has withdrawn from said church and resigned his trusteeship ; that John

W. Marshall has withdrawn from said church and ceased to be a member thereof, and that his office as trustee has, therefore, expired; that David Ream, Samuel R. Smith and Garret Vanmeter (of Jacob) have all departed this life.

"Your petitioner further showeth that on the 6th day of April, 1866, as such preacher in charge as aforesaid, your petitioner did call a meeting of all the survivors and remaining trustees of said church as aforesaid, having previously notified all of said trustees that were then remaining and surviving, namely; James Carskadon, Isaac H. Carskadon, Henry Trout and Enos Everett, and thereupon did, to wit, on the 6th day of April, 1866, proceed to organize, and did organize said meeting of said trustees for the purpose of nominating proper persons to fill the vacancies and places of such former trustees of said church, &c., whose offices as such had been and continued to be, and then were vacated; and thereupon your petitioner, as such preacher in charge as aforesaid, did then and there nominate James McDonald as one of said trustees in the place of James Sheetz, who had withdrawn from the said church, William T. Cookus as trustee in the place of John W. Marshall, who had also withdrawn from the said church and whose office as trustee had expired, Tobias Baker as trustee in the place of David Ream, who had then departed this life, Henry Head as trustee in the place of Garret Vanmeter, who also had then departed this life, and William Jenkins trustee in the place of Samuel R. Smith, who also had then departed this life.

"In tender consideration whereof, your petitioner, as the proper authority aforesaid, hereby makes application to said court to appoint James McDonald as one of the trustees in the place of James Sheetz, who had then withdrawn from said church, William T. Cookus in the place of John W. Marshall, who had also withdrawn, and whose office as trustee at his withdrawal expired, Tobias Baker trustee in the place of David Ream, who

then had departed this life, Henry Head trustee in the place of Garrett Vanmeter, who also had then departed this life. The said last named persons so to be appointed being all members of said church, and in full communion and good standing, and all over twenty-one years of age, and have been members of said Methodist Episcopal church for more than one year last past. And as in duty bound your petitioner will ever pray.

"GEORGE CROSSFIELD,

"*Preacher in charge of the South Branch circuit of the Methodist Episcopal church.*

"Subscribed and sworn to before me this 4th day of September, 1866.

"CHAS. M. TAYLOR,

"*Clerk Circuit Court, Hampshire county, W. Va.*"

From said paper "B," it would seem that the petition last named was filed in September, 1866. There also appears in the record what purports to be an answer to said Crossfield's petition, which is as follows, viz:

"The answer of Solomon Vanmeter, Samuel Lopp, John J. Combs, and Isaac N. Heiskell, to a petition and application of Rev. George Crossfield to the circuit court of Hampshire county, praying for the appointment of trustees to fill certain vacancies in the trusteeship for the parsonage of the Methodist Episcopal church at Romney:

"These defendants, for answer and defence, say that said George Crossfield is not the proper authority, as contemplated by the statute in that case made and provided, of the congregation of Romney, or the South Branch circuit of said church, to make the application aforesaid, and they also deny that there was any properly or legally organized meeting of the trustees remaining or surviving of those trustees who had been constituted by and under the deed referred to in said petition, or that any such duly authorized meeting did nominate or appoint the persons to fill vacancies referred to in the said petition. It is true that Angus W. McDonald and others, on the 8th day of September, 1856, executed the

deed in the petition mentioned for lots numbers twenty-three and twenty-four, in the town of Romney, to James Sheetz, James Carskadon, Isaac Carskadon, David Ream, John W. Marshall, Samuel R. Smith, Henry Trout, Garret Vanmeter (of Jacob) and Enos Everett, trustees, to the same as a parsonage or place of residence for the use of the ministers or preachers of the Methodist Episcopal church in the United States of America, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said church, at their general conference in the United States of America: and in further trust that they shall at all times permit such ministers and preachers belonging to said church as shall from time to time be duly authorized by the general conference of said Methodist Episcopal church, or shall by the annual conference, authorized by said general conferences, be from time to time stationed on the circuit within the bounds of which said house and lots are situated, to use and occupy said house and lots as a parsonage or place of residence. The said deed contains the following exception and proviso, viz: 'But in case the general conference of said church shall make such change in the discipline or constitution of said church at any time hereafter as shall render it necessary or expedient for the annual conference in the bounds of which said lots are situated, to separate from said general conference, then said lots are to be held for the use of the ministers or preachers sent by said annual conference to the circuit within the bounds of which said parsonage is situated.' A copy of said deed is filed herewith as part of this answer, marked, Defendants' Exhibit.'

"The provision of the deed just cited, was inserted to meet the wishes of the founders of the charity created by the deed, so as to meet a contingency which afterwards occurred in the history of the church. In order to explain more fully the purport of said provision, respondents beg leave to refer here to some facts well known in

history. In the year 1844, the said Methodist Episcopal church in the United States of America, owing to some difficulties growing out of the subject of slavery, thought it expedient and proper to divide itself, and did divide itself in accordance with a plan of separation, which is referred to and made a part of this answer; that the Baltimore annual conference, which embraced in its bounds the South Branch circuit, as it then existed, and as it existed when said deed was made at that time, 1844-5, remained and adhered to that part of the church so divided as aforesaid, which, to distinguish it from the southern wing, we will call church north, but it was with the condition or understanding that the then existing status of church legislation touching slavery should not be disturbed; that said Baltimore annual conference, again and again, by unanimous vote, determined and declared it would not hold connection with any ecclesiastical body that made non-slaveholding a condition of membership in the church, or that declared slavery to be a sin ; that the said general conference, in May, 1860, at Buffalo, did introduce into the discipline or constitution of said church a new chapter, declaring slaveholding to be contrary to the law of God and a sin, thereby making non-slaveholding a test of membership in the church; that the said annual conference, at its next annual meeting held at Staunton, Virginia, in March, 1861, true to its position ever since 1844, declared itself separate from and independent of the jurisdiction of the said general conference, thus complying with the condition and meeting the contingeney provided for in said deed, thus separating from the general conference on account of its action aforesaid. The said Baltimore annual conference claimed to be, notwithstanding, an integral part of the Methodist Episcopal church, but repudiating the said new chapter as unconstitutional, made no change of faith, doctrine or discipline, and doctrinally, morally, ecclesiastically and economically, it continued to be the Baltimore annual conference as before, save in its connection

with the said general conference, and mere verbiage; that <sub>Special Term.</sub>

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

said Baltimore annual conference, so independent of the general conference as aforesaid, has ever since 1861 held its annual meetings under its own name, and in the spring of 1866, while sitting at Alexandria, by its proper and regular authorities, deputed the Rev. Charles L. Torreyson, a member of said conference, as the traveling preacher in charge of the said South Branch circuit, and he was duly received as such preacher in charge by the congregation of said circuit. The disciplines as published and received of said churches, both north and south, and the proceedings of said church in 1844, and of said bodies since, are filed herewith as parts of this answer.

"It is further true, that some of the preachers attached to the Baltimore annual conference did, as early as 1862, go off and attach themselves to said general conference, by forming another body called the Baltimore annual conference, in spite of the action of said conference in 1861; and it is under this so called Baltimore annual conference that said George Crossfield is assuming to act. It is admitted that James Sheetz has withdrawn from the Methodist Episcopal church, and declined to act in his office as trustee. It is also admitted that David Ream, Samuel R. Smith and Garret Vanmeter have been dead for some time. And in view of these vacancies, the said Rev. Charles L. Torreyson, preacher in charge of said circuit of the South Branch, constituted of the same appointments of which said circuit was composed for years before 1861, and at that time at which said deed was made, by his petition in writing, joined in by John W. Marshall, an officer and steward of said congregation at Romney, made application to this court at its May term, 1866, and such proceedings were then and there had as that these respondents were appointed by said court to fill the vacancies aforesaid. The appointments were made agreeably to the wishes of a majority of the congregation at Romney, and of the congregations through-

out the said circuit as contemplated by the said deed. A copy of the proceedings in the matter of said Torreyson's petition is filed herewith as part of this answer marked 'Exhibit.'

" These respondents deny that John W. Marshall has withdrawn from the said church, or resigned his trusteeship; nor has his office or appointment expired. These respondents, therefore, submit that the vacancies in the trusteeship have already been filled, and as the petitioner, Crossfield, alleges no cause to remove any of the trustees, his petition is nugatory.

"They further claim, that as the general conference have violated the conditions on which the Baltimore annual conference adhered to the church north in and after 1844, the members of said conference, and said conference bodily, had a right to withdraw from the jurisdiction of the general conference, and claim the church property in their *midst* under the plan of separation, there being no limitation to their right to avail themselves of that plan ; also that the provision of the deed above recited, takes said property out of the control or influence of said Crossfield and the orginization to which he adheres. And inasmuch as said deed is void unless it can be construed to be for the use of the local congregation, that as the local congregation adheres to Mr. Torreyson as its preacher in charge, the said property ought to be for his use and under the control of his congregation. But if the petitioner will persist in his attempt, these defendants must ask that proper issues be made up and tried before a jury, and the matter as a matter of right be determined according to law.

" A. P. White,
" *For Respondents.*"

This paper is not verified by affidavit so far as shown by the record. But according to said paper, " B," was filed October 10, 1866. The written notice of said George Crossfield, that he would make application as stated in his petition aforesaid, is dated the 20th of

1880
Special Term.

Carskadon et al
v.
Torreyson et al.

August, 1866, and it is to the next September term of the circuit court thereafter, and it appears to have been served on Isaac N. Heiskell, Charles S. Torreyson, Samuel Lopp, John J. Combs, John W. Marshall and Solomon Vanmeter. No order of court is set out in the record of the docketing of said notice of Crossfield or of the filing of said answer thereto, but in the printed record of this cause the clerk of the court at page fifty seven certifies, that the said answer "was filed in the papers of said petition on the 10th day of October, 1866, as appears from the records of said court in said cause."

It appears by said paper, "B," that on the 5th day of March, 1867, the circuit court of the county of Hampshire made and entered an order removing the said cause, *Carskadon et al.* v. *Charles S. Torreyson et al.*, to the circuit court of the county of Harrison. It further appears, that on the 8th day of March, 1867, the following order was made by the said circuit court of Hampshire county, viz:

" In the matter of the petition for the appointment of trustees for the Methodist Episcopal church, on motion of Rev. George Crossfield, the petitioner above named, by his counsel, the above cause is ordered to be docketed in this court on the chancery side thereof, and the petition and all records and papers pertaining thereto on file in this court be sent to the clerk of the circuit court of Harrison county under change of venue ordered by this court herein to said Harrison county, the judge of this court being so situated, that in his judgment it is improper for him to determine the cause."

It further appears by the printed record in this cause, that on the 25th day of February, 1870, the circuit court of said county of Harrison made and entered the following order, viz:

" JAMES CARSKADON *et al.* v. CHARLES S. TORREYSON *et al.—In chancery.*

" *George Crossfield* v. *C. S. Torreyson et al.*—Upon a petition for the appointment of trustees. By the consent

of the parties, by their attorneys, these causes are ordered to be removed to the circuit court of Mineral county, there to be tried and determined."

On the 23d day of March, 1870, it appears, that the circuit court of Mineral county made and entered an order docketing for hearing the cause of *Carskadon et al.* v. *Torreyson,* "which was removed from the circuit court of Harrison county to the circuit court of Mineral county," and the cause was continued. On the 26th day of August, 1870, it appears, the said cause was by the consent of the parties continued until the 18th day of October "to be heard in chancery." And afterwards, to wit: on the 24th day of December, 1870, the said circuit court of the county of Mineral made and entered the following decree, viz:

"JAMES CARSKADON *et al.* v. C. S. TORREYSON *et al.*— *Injunction.*

"This cause came on to be heard this day upon the bill, and exhibits filed therewith, the joint and several answers of the defendants, C. L. Torreyson, John W. Marshall, Samuel Lopp, John J. Combs, Isaac N. Heiskell, Solomon Vanmeter and O. P. Wingman, and replication thereto, the petition and disclaimer of James Sheetz, who was directed to be made a party to this suit, filed by consent of parties, the deposition of witnesses and exhibits therewith, and the records, papers, books, pamphlets and documents pertaining to matters relevant to this cause, agreed in writing between the parties to this suit, by their counsel, to be read as evidence on the trial of this cause, subject, however, to all legal objections as to the matter contained therein, and was argued by counsel. And the court being of opinion that the order of the circuit court of Hampshire county, made at its March term, 1866, upon the application of the defendant, C. L. Torreyson, appointing the defendants, John W. Marshall, Samuel Lopp, John J. Combs, Isaac N. Heiskell and Solomon Vanmeter, trustees of the par-

sonage-property mentioned and described in the deed therefor from Angus W. McDonald and wife and Arnold S. Trowbridge to James Sheetz, James Carskadon and others, trustees, dated the 8th day of September, 1856, and filed as an exhibit in the papers of this cause, in the place of the former trustees, viz: James Sheetz, David Ream, Samuel R. Smith and Garret Vanmeter (of Jacob), was not made upon the application of the proper authorities of said parsonage-property as required by the statute, the said defendant, Torreyson, not being preacher in charge of the South Branch circuit of the Baltimore annual conference of the Methodist Episcopal church of the United States of America, and that said order was obtained illegally and improperly, and is, therefore, null and void. And the court being further of opinion that the Baltimore annual conference of the Methodist Episcopal church which met in Staunton, Virginia, March 13, 1861, and adjourned to and did meet in Baltimore in 1862, and annually thereafter, as alleged in the bill, to which said conference the complainants adhered, and which appointed Rev. George Crossfield preacher in charge of the South Branch circuit of the Baltimore annual conference of the Methodist Episcopal church, in the year 1866, was the Baltimore annual conference of the Methodist Episcopal church of the United States of America, and that said Baltimore annual conference has never withdrawn from the general conference, so that the contingency mentioned in said deed has never happened or come to pass. And the court being further of opinion that the body of ministers which met at Alexandria, Virginia, in 1866, and which appointed the defendant, C. L. Torreyson, as preacher in charge of the South Branch circuit, was not the Baltimore annual conference of the Methodist Episcopal church within the meaning of said deed. The court doth, therefore, adjudge, order and decree that said order of said court appointing the said defendants trustees in the said deed in the places of the former

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

trustees as aforesaid, be set aside and annulled, and forever held for naught, and that the said defendants, and every of them, be perpetually enjoined and restrained from acting as trustees under said deed, or under or by virtue of said order of said court, and from in any manner as trustees further interfering with said parsonage-house, or the real estate named in said deed, or any property mentioned in said deed from McDonald and others to Sheetz and others, for lots numbers twenty-three and twenty-four in the town of Romney, Hampshire county, and of record in the recorder's office in Hampshire county, in book No. 50, page 75.

" And the court doth further adjudge, order and decree that the complainants in said bill recover of the defendants therein their costs by them about their suit in this behalf expended. And upon the petition of Rev. George Crossfield, heard herewith, for the appointment of trustees in the room of former trustees, the court doth grant said petition, and hereby appoints and confirms as trustees in said deed from A. S. Trowbridge and wife, and A. W. McDonald and wife to the trustees of the Methodist Episcopal church, recorded in deed book No. 50, page 75, of the land records of Hampshire county, in the office of the recorder thereof, James McDonald as one of the trustees in the room of James Sheetz, who had withdrawn from the said Methodist Episcopal church, and who is hereby removed ; William T. Cookus in the room of John W. Marshall, who has also withdrawn from the Methodist Episcopal church, and whose office as trustee at withdrawal expired, and who is hereby removed ; Tobias Baker in the room of David Ream, who has departed this life ; Henry Head in the room of Garrett Vanmeter, who has also departed this life; William Jenkins in the room of Samuel R. Smith, who has also departed this life.

" And the court doth further adjudge, order and decree, that the complainants and the trustees hereby appointed do hold and apply said parsonage-property for

the use and benefit of the ministers appointed by the Baltimore annual conference of the Methodist Episcopal church, in connection with the general conference of the Methodist Episcopal church, as provided in said deed. And the court doth further adjudge, order and decree, that the petitioner, George Crossfield, recover against defendants in said petition, to wit, Charles L. Torreyson, Samuel Lopp, John J. Combs and John W. Marshall, his costs by him about said petition expended, but no attorney fee shall be taxed against defendants in this cause."

From this decree the defendants obtained an appeal from one of the judges of this Court in vacation; and in this way this cause is before us for review and determination.

*Robert White*, for appellants, cited the following authorities:

9 Leigh 131; 2 Rob. 129; 9 Gratt. 324; 3 W. Va. 80; 4 Rand. 192; Code of Va. 1860, p. 412, §§ 8, 9, 10; 2 Rob. (old) Pr. 262; 5 Gratt. 9-31; 7 Gratt. 26; Code of Va. 1860, ch. 179, § 10; 2 Pars. Cont. (ed. 1864) 494–499; 2 Smith L. Cas. 515; 3 Washburne 333; 2 Kent 556; 3 Leigh 450; 4 Leigh 327; 10 Leigh 147; 13 Gratt. 301; 15 Gratt. 432; Hill on Trustees 128 and n. 1; *Id.* 79 and n. 1; 4 Wheat. 1; 9 How. 58; 2 Story Eq. §§ 1151–1157, 1158, 1159, 1183, 1191 a. and n. 1, 1196 a., 1200.

*F. M. Reynolds*, for appellees, relied on the following authorities:

2 Leigh 157; 2 Rob. (old) Pr. 214, 265, 267; Hilliard Inj. 375; *Id.* 65, 66; 30 Eng. Chy. 572; 22 Ind. 440; 2 Pet. 566; 30 Ala. 352; 32 Ala. 530; 27 Ga. 391; 5 Gratt. 645; 11 Humph. 523; 24 Miss. 69; 32 Ill. 183; Code of Va. 1849, ch. 77, § 11; 4 Leigh 5; 5 W. Va. 234, 235; 11 Ga. 9; 2 W. Va. 310; 16 How. 310; 43 Pa. St. 244; 67 Pa. St. 138; 4 N. H. Eq. 77; 5 Ohio

1880
Special Term.

Curskadon et al.
v.
Torreyson et al.
283; 23 Ill. 456; 53 N. H. 9; 16 Am. Rep. 82; 9 Pa. St. 321; 4 Bush 228; 15 Wall. 131; 24 Ohio St. 254; 16 Mass. 488; 13 Gratt. 301.

HAYMOND, JUDGE, delivered the opinion of the Court:

The appeal in this case is from the whole of the final decree; and all the parties to the suit in chancery and the notice of Crossfield for the appointment of trustees are before this Court by summons, appearance by counsel, &c. The two causes were heard together by the court below, and but one decree made, as appears by the decree, and both causes disposed of by that decree. And no question has been made before this Court, as to whether the appeal allowed in this Court does not properly bring before this Court for review the whole of said decree. It seems to me however under the circumstances appearing in this case, as all the parties are before this Court, that the whole of said decree is before this Court for review and that this Court may now properly pass upon the same. Entertaining this view I will now proceed to consider and ascertain and determine, whether there is error in said decree, for which it should be re-versed, and what disposition should be made of the causes.

A number of errors have been assigned by the appellants as existing in said decree; but the one which has perhaps been most elaborately argued by counsel for the appellants and appellees before this Court is, whether the property conveyed by the deed of Angus W. McDonald and Cornelia, his wife, and Arnold S. Trowbridge, to James Sheetz and others, bearing date the 8th of September, 1856, for the land therein mentioned, (which deed I have hereinbefore set out,) should be held by trustees under its provisions for the use and benefit of the members and congregations of the Methodist Episcopal church of the South Branch circuit of said church of the Baltimore annual conference of the Methodist Episcopal church, in connection with the general conference of

said church, as a residence for the minister of the said South Branch circuit of said church, or for the use and benefit of the members and congregations of the Methodist Episcopal church south of the South Branch circuit of the last named church of the Baltimore annual conference of the Methodist Episcopal church south in connection with the general conference of the last named church, as a residence for the ministers of the last named South Branch circuit.

We are confronted in the beginning of the investigation with the question raised by the counsel for the appellants, as to whether the said deed under the law, as it existed in the State of Virginia at the time the said deed was made and afterwards, conveyed any right of property to the trustees therein named in trust for the use of the *cestui que trust* or *cestuis que trust,* or either of them, in said deed mentioned and referred to, which said *cestuis que trust,* or either of them, could take, hold or enforce, or, in other words, whether under the laws the trusts attempted to be created by said deed are not inoperative and in effect void, because of the indefiniteness of the *cestui que trust* or *cestuis que trust* therein named.

This presents a very important and interesting question for determination. To determine this question satisfactorily it is necessary and proper to ascertain and determine what is the law. And first I will proceed to ascertain what was the law of Virginia applicable thereto, at the time the deed was made; secondly, to ascertain the law of this State applicable thereto ; and thirdly, whether the trusts attempted to be created by said deed for the use of the *cestuis que trust,* or either of them, therein named is operative and enforcible under the law or laws applicable thereto.

In the case of *Gallego's ex'rs* v. *Attorney General,* 3 Leigh 450, it was decided by the Court of Appeals of Virginia, in 1832, that the courts of Chancery in Virginia had no jurisdiction to enforce devises and bequests to religious societies or congregations. The court said,

that as the statute of charitable uses, 43 Elizabeth, under which alone such vague bequests could be established, if ever in force in Virginia, had been repealed in 1792 in the general repeal of English statutes. Charitable bequests were to be treated as standing on the same footing with other bequests. If *definite*, they were to be treated as trusts, which courts of equity would execute by virtue of their ordinary jurisdiction; but if indefinite, they were no longer recognized by law, and could not be enforced. A devise or bequest of property to or for the uses of a religious congregation was, it was said, of the character last mentioned. The decision in the case of *Gallego's ex'rs* v. *Attorney General*, was approved by the same court in 1856, in the case of *Brooke et al* v. *Shacklett*, 13 Gratt. 301, and in 1859 in the case of *Seaburn's ex'r* v. *Seaburn et al.*, 15 Gratt. 423. This decision has also been recognized and approved by this court in the case of *The Bible Society* v. *Pendleton, trustee*, 7 W. Va. 69, and in the case of *Knox* v. *Knox's ex'rs*, 9 W. Va. 124.

In the case of the *Bible Society* v. *Pendleton, trustee*, Judge Paull, who delivered the opinion of the Court, in speaking of the case of *Gallego's ex'rs* v. *Attorney General*, 3 Leigh 450, and of Judge Tucker's opinion therein says: "Here also he reviews and vindicates the past legislation of that State, and the policy on which it was based, to prevent the possible interference of religious establishments in matters of government, if they were permitted to accumulate large possessions; hence the tenacity, with which applications for permission to take property in a corporate capacity (even the necessary grounds for churches and graveyards) have been refused. His views are illustrated in this regard by a reference to the tremendous evils to be found in the history of France and of England from the vast accumulations of property in the hands of church establishments, and these views have ever since left their impress on the jurisprudence and history of that State. This may be seen in the fact,

that in the amended constitution of that State of 1851 it is provided for the first time, that the general assembly shall not grant a charter of incorporation to any church or religious denomination. The authority of that case has been recognized, and has been affirmed in the case of *Brooke* v. *Shacklett*, 13 Gratt. 301, and *Seaburn's ex'r* v. *Seaburn et al.* 15 Gratt. 423."

In the case of *Knox* v. *Knox's ex'rs*, 9 W. Va. 124, the judge who delivered the opinion of the court at page one hundred and forty-nine says: "It must be clear from the authorities cited, that the statute of 43 Elizabeth, if it ever was in force in Virginia, was repealed, and that the principles settled in the case of *Gallego's ex'rs* v. *The Attorney General*, 3 Leigh, is the law of Virginia and of West Virginia, except so far as since modified or changed by acts of the Legislature. Whatever may be the law in other States, there can no longer be any doubt that in Virginia and West Virginia indefinite charities are void. The want of clearly recognized beneficiaries constitutes the indefinite character of these charities and renders them void." See *Dashiell* v. *The Attorney General*, 5 Har. & J. 392; 6 *Id.* 1; *Levy* v. *Levy*, 33 N. Y. 97; *Morice* v. *The Bishop of Durham*, 9 Ves. 39.

If the law stood, as it did prior to the passage of certain acts, whose provisions will be presently noticed, it would be clear, that the said trusts specified in said deed would be inoperative and in effect void under the law, though the said deed purports to be for a valuable consideration and contains covenants of general warranty; yet the same or perhaps greater indefiniteness as to the beneficiaries, which defeated the bequest to the Roman Catholic congregation in *Gallego's ex'rs* v. *Attorney General*, is to be found in the deed here, and would present an insuperable difficulty in the way of the courts undertaking to control the trustees in the performance of their duties, at the instance of a beneficiary in the deed, whether he claimed use in the property as a member of

the Methodist Episcopal church or of the Methodist Episcopal church south, or as a member of one of the congregations of either of said churches worshipping within or without the boundary of the South Branch circuit. *Brooke* v. *Shacklett*, 13 Gratt. 310. It is necessary and proper therefore to examine the acts of the Legislature of Virginia and West Virginia to a certain extent, and to enquire, whether the trusts of the deed can be brought within the scope of their provisions. The first of the acts to which I shall refer, is the act entitled, "An act concerning conveyances or devises of places of public worship." Acts Legislature of Virginia, 1841-42, page 60. This act was passed February 3, 1842, and is as follows, viz:

"1. *Be it enacted by the General Assembly :* That where any lot, or part of a lot, tract or parcel of land has been heretofore conveyed or devised, or shall hereafter be conveyed or devised, to one or more trustees for the use and benefit of any religious congregation, as and for a place of public worship, the same, and all buildings, and other improvements thereupon, shall be held by such trustee or trustees (and their successors) for the purposes of the trust, and not otherwise.

" 2. *And be it further enacted,* That where any conveyance or devise shall hereafter be made of such property for the use and benefit and purpose aforesaid, the same shall not be void or frustrated by reason of the want of trustees to take and hold the same in trust ; but trustees may be appointed in the manner hereinafter directed.

" 3. *And be it further enacted,* That when such conveyance and devise shall hereafter be made, whether by the intervention of trustees or not, the circuit superior court of law and chancery of the county or corporation, where such property is or may be situate, shall on application of the attorney for the commonwealth on behalf of the authorized authorities of any religious congregation have full power and authority to appoint trustees originally, where there were none, or to substitute others from time

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

to time, in cases of death, refusal or neglect to act, removal from the county or corporation, or other inability to execute the trust beneficially and conveniently ; and the legal title shall thereupon become exclusively vested in the whole number of the then trustees and their successors.

" 4. *And be it further enacted,* That a majority of the acting trustees for any such congregation may sue and be sued in their own names in relation to the title, possession or enjoyment of such property without abatement by the death of any of the trustees, or the substitution of others ; but the action or suit may notwithstanding be proceeded to its final termination in the names of the trustees, by or against whom the same was instituted, and all other proceedings had in relation thereto in like manner, as if such death or substitution had not occurred. *Provided,* That such trustees for the use of any religious congregation shall not hereafter take or hold at any one time any tract of land in the county exceeding in quantity thirty acres, or in any incorporated town exceeding two acres ; nor shall such real property be held by them for any other use than as a place of public worship, religious or other instruction, burial ground or residents of their minister.

" 5. This act shall be in force from the passage thereof."

The next act was passed on the 20th day of March, 1847. See Acts of the Legislature of Virginia 1846–47, page 66. The last named act gives to any one or more of the members of any religious congregation the right, in his or their names, on behalf of such congregation to commence and prosecute a suit in equity against the trustees to compel them to apply the property for the use or benefit of the congregation, as their duty shall require. These acts of the Legislature of Virginia of 1841-42 and 1846-47 seem to have continued unchanged, until the Code of Virginia of 1849 took effect, which was on the 1st day of July, 1850. The provisions of the

Code of Virginia of 1849 are contained in chapter 77 thereof at pages 362 and 363, sections 8, 9, 10, 11, 12 and 13, and are as follows:

"Section 8. Every devise or dedication shall be valid, which since the 1st day of January, 1777, has beeñ made, and every conveyance shall be valid, which hereafter shall be made, of land for the use or benefit of any religious congregation as a place of public worship or as a burial place or a residence for a minister; and the land shall be held for such use or benefit for such purpose and not otherwise.

"Section 9. The circuit court of the county or corporation, wherein there may be any parcel of such land or the greater part thereof, may on application of the proper authorities of such congregation from time to time appoint trustees, either where there were none, or in place of former trustees, and change those so appointed, whenever it may seem to the court proper, to effect or promote the purpose of the conveyance, devise or dedication; and the legal title to such land shall for that purpose be vested in the said trustees for the time being and their successors.

"SEC. 10. When books or furniture shall be given or acquired for the benefit of such congregation, to be used on the said land in the ceremonies of public worship, or at the residence of their minister, the same shall stand vested in the trustees having the legal title to the land, to be held by them, as the land is held, for the benefit of the congregation.

"SEC. 11. The said trustees may, in their own names, sue for and recover such land or property, and be sued in relation thereto. Such suit, notwithstanding the death of any of the said trustees or the appointment of others, shall proceed in the names of the trustees, by or against whom it was instituted.

"SEC. 12. Such trustees shall not take or hold at any time more than two acres of land in an incorporated town, nor more than thirty acres out of such a town.

"SEC. 13. Any one or more of the members of any re-1880
Special Term.
Carskadon et al.
v.
Torreyson et al.ligious congregation may, in his or their names, on behalf of such congregation, commence and prosecute a suit in equity against any such trustee, to compel him to apply such land or property for the use or benefit of the congregation, as his duty shall require. No member of the congregation need be made a defendant to such suit, but, in other respects, the same shall be proceeded in; and heard and determined as other suits in equity, except that it may be proceeded in, heard and determined as other suits in equity, notwithstanding the death of the plaintiff, as if he were still living."

On the 3d day of March, 1852, the Legislature of Virginia passed an act entitled, "An act to authorize the circuit courts to direct the sale of church property," which is as follows, viz:

" 1. *Be it enacted by the General Assembly,* That whenever any religious congregation, for whose use a conveyance, devise or dedication of land has been lawfully made, shall deem that their interests will be promoted by a sale of such land, it shall be lawful for any member of such congregation, in his name, and on behalf of the other members thereof, to prosecute a suit in equity for that purpose in the circuit court of the county or corporation, in which such land, or the greater part thereof, may lie, against the trustees, or the survivors of them, in whom the legal title may be; and it shall be lawful for such court, if a proper case be made, and the court be of opinion that the rights of others will not be violated thereby, to order the sale of such land, and make such disposition of the proceeds thereof as the congregation may desire.

"2. No member of the congregation need be made a defendant to such suit, but any member thereof may voluntarily enter himself as such and contest the same. In other respects the suit shall be heard and determined as other suits in equity, except that it may be proceeded

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

in notwithstanding the death of the plaintiff, as if he were living.

"3. This act shall be in force from its passage."

Afterwards, on the 13th day of March, 1856, the Legislature of Virginia passed another act which is as follows, viz :

"1. *Be it enacted by the General Assembly,* That the first section of an act entitled 'An act to authorize the circuit courts to direct the sale of church property,' passed March 3, 1852, be re-enacted and amended as follows :

"SEC. 1. That whenever any religious congregation, benevolent or literary association, for whose use a conveyance, devise or dedication of land has been lawfully made, shall deem their interest will be promoted by a sale of such land, it shall be lawful for any member of such congregation, benevolent or literary association, in his name, and on behalf of the other members thereof, to prosecute a suit in equity for that purpose, in the circuit court of the county or corporation in which such land, or the greater part thereof may lie, against the trustees or the survivors of them, in whom the legal title may be ; and it shall be lawful for such court, if a proper case be made, and the court be of opinion that the rights of others will not be violated thereby, to order the sale of such land, and make such disposition of the proceeds thereof as the congregation, benevolent or literary association may desire."

"2. This act shall be in force from its passage."

The eighth, ninth, tenth, eleventh and twelfth sections of the seventy-seventh chapter of the Code of Virginia of 1860, are the same as the same sections of chapter seventy-seven of the Code of 1849, of the State of Virginia, which I have here quoted, and the thirteenth section of said chapter of the Code of Virginia, of 1860, is the same as the first section of the act of the Legislature of Virginia, as amended and re-enacted by the said act of the Virginia Legislature, passed the 13th day of March, 1856, which I have also copied herein above.  I have

not been able to find any legislation in Virginia subsequent to the said Code of 1849, bearing upon the subject, prior to said Code of 1860, other than above referred to, and the law as contained in the said Code of 1860. The law as contained in the Code of 1860, in said chapter seventy-seven thereof, continued in force in this State from its formation, until the Code of this State of 1868 took effect in April, 1869, after the commencement of this suit. The law upon the subject, as contained in the said Code of Virginia of 1860 is carried into the Code of this State of 1868 without material change, except as hereinafter stated, and is contained in the first, second, third, fourth, fifth and sixth sections of chapter fifty-seven of the Code of this State of 1868.

From what has been before stated it will be seen, that the statute-law bearing upon the subject of enquiry, as contained in the Code of 1860, chapter seventy-seven, of Virginia, was in force with us until the present time in all material respects bearing upon said deed. The only change in the statute since 1860 by the Code of this State of 1868 is that the words, "there may be any parcel of" contained in the first and second lines of the ninth section of chapter seventy-seven of said Code of 1860 are omitted from the second section of chapter fifty-seven of said Code of 1868, and the word "survivors," contained in the thirteenth section of said chapter seventy-seven, is omitted from the sixth section of chapter fifty-seven of the Code of 1868, and the word "successors" is substituted in lieu thereof. If there are other changes at all material in this case, they do not now occur to me.

The next question now to be considered is: Does the *cestui que trust* or *cestuis que trust*, specified in said deed come within the meaning or purview of the statute, or in other words, does the statute cover or authorize the trusts specified in said deed? If it does, then of course the trust should be enforced according to the true intent

and effect thereof. But according to the authorities I have cited, and which prevail with us, if the statute does not cover or authorize such trust or uses, then the trusts or uses are inoperative and cannot be enforced, because the *cestui que trust* is too vague and indefinite according to the common law and the rules and principles prevail-ing with us in courts of equity in such cases. My under-standing of the statute is, that the conveyance of this land must be at least substantially for the use or benefit of some local religious congregation as a place of public worship, or for the use of such congregation as a burial place, or for the use of such congregation as a residence for a minister. And it seems to me, that it cannot be said from any reasonable or fair interpretation of said deed, that it amounts in substance to a conveyance of the land therein mentioned for either of the trusts or uses specified in the statute.

In the book of discipline of the Methodist Episcopal church of 1860, at pages one hundred and sixty-one to one hundred and sixty-six inclusive, there is contained and recommended a form of a deed to be adopted, so far as the laws of the States respectively, will admit of it. In the case of *Gibson et al.* v. *Armstrong* and *Armstrong* v. *Gibson et al.*, 7 B. Mon. 481, the deed for the land was substantially the same in most respects as that prescribed in said discipline book of 1860, as I infer from the state-ment of Judge Marshall, who delivered the opinion of the court, at pages 488 and 489. At page 489 Judge Marshall says: "The two first clauses have been copied literally, and of the two others, of which the substance is stated, such expressions are retained as are supposed to be in any degree illustrative of the previous portions and of the intended operations of the entire instrument. In reference to a question aris-ing incidentally in the case, we remark that the phrase, 'the said church,' used three times in the third clause, evidently means, in the second instance of its use there-in, the local church or congregation worshipping on the

premises, of whose members alone the stationed preacher has the pastoral charge; and we think the same meaning should be given to the same words in the first and third instances of their use in the same clause. From this construction it follows, that a trustee might be regarded as vacating his office by ceasing to be a member of the local church, of which he was a trustee, and that his place might be filled according to the third clause of the deed, although he took membership in the local church of some other place, and in that way continued to be a member of the Methodist Episcopal church." The judge also says, at page 490 : "A second proposition arising from the very nature and circumstances of the case, and demonstrated by the features of the deed and other considerations just referred to, is, that notwithstanding the apparent comprehensiveness of terms, in which the use is declared in the favor of members of the Methodist Episcopal church in the United States, the actual use, that is, the use of the premises by occupancy and for accommodation, and the immediate control of them as a place of worship, was intended to be secured to the local congregation or society, subject to the rules and regulations prescribed by the highest authorities of the church." In this case the deed conveyed to trustees and their successors forever a lot or parcel of land in the city of Maysville, upon trust for the purpose of erecting a house of worship thereon for the use, &c.

In the case of *Brook et al.* v. *Shacklett*, 13 Gratt. 301, the deed was dated 3d day of June, 1842, and the consideration therein stated was $90.00, and it conveyed a lot in the town of Salem in the county of Fauquier in trust for the purpose of erecting a house of worship thereon for the use, &c. The deed in this case seems to be substantially the same as that in the case in 7 B. Mon. above cited, as well, in most parts, as the said form contained in the book of discipline of the Methodist Episcopal church of 1860. In this case Judge Daniel, who it seems delivered the opinion of a majority of the court, at pages 312 and 313 says :

"There is, I think, nothing in the language of these laws" (meaning the 8th, 9th, 10th, 11th, 12th and 13th sections of chapter 77 of the Code of Virginia of 1849, and the provisions of the said acts of 1842 and 1846-7) "to show that the Legislature designed to confer peculiar benefits on any particular sect or sects. And the manfestation of any such design would not only have been utterly at war with the whole spirit of our institutions, but also in direct conflict with the letter of the Constitution declaring that the Legislature shall not confer any peculiar privileges or advantages on any one sect or denomination. The terms of the acts are broad enough to embrace not only such congregations as may be independent of others, choosing their own pastors, and making the laws for their own government, but also such as may be united with other congregations under a common government, from which they may respectively receive the pastors that are to instruct them or the laws that are to regulate them, without having any voice either in the selection or appointment of the former, or in the framing or enactment of the latter. And such is, I think, the obvious design of the Legislature. The benefits which these acts confer are intended for any and every religious congregation, without regard to the peculiarities of religious faith or the forms of church governments. It is, however, equally obvious that the conveyances, devises and dedications, to which the acts mean to give validity, are conveyances, devises and dedications of property for the use of the religious congregations therein mentioned, in the limited and local sense of the term, viz: for the members (of these religious congregations) as such, who from their residence at or near the place of public worship may be expected to use it for such purpose. This interpretation is to be drawn from the general tenor of the acts, but more especially from the language of those portions of them that stand in the Code as the eighth and tenth sections of the chapter before referred to. The dedications of real es-

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

tate must be made for the use of the 'religious congregation, as a place for *public worship, or as a burial place, or as a residence for a minister;*' and that of the 'books and furniture, for the benefit of such congregation,' to be used on the said land in the ceremonies of public worship, or at the residence of their minister, uses which it is plain, from their very nature and connection and the connection in which they are mentioned, must belong peculiarly in the local society, the religious congregation at or near the locality of the property conveyed. No dedication of property to religious uses which does not respect these rights of the local society or religious congregation, no deed which does not design such enjoyment of the uses of the property conveyed, by the local society or congregation, can be placed within the influence and protection of the statutes.

"The deed under consideration, in its first clause or declaration of trusts, provides that the trustees are to hold the property conveyed to them, and their successors forever, in trust that they shall build or cause to be built thereon a house or place of worship for the use of the members of the Methodist Episcopal church in the United States of America, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said church, at their general conference in the United States of America; and in further trust and confidence, that they shall at all times forever hereafter permit such ministers and preachers belonging to said church, as shall from time to time be duly authorized by the general conference of the ministers and preachers of the said Methdist Episcopal church, or by the annual conferences authorized by the said general conference, to preach and expound God's holy word therein.

"I am free to admit, that the first impression which this clause of the deed is calculated to make is that of a declaration of trust, not for the benefit of a local society or congregation of Methodists worshipping or expected to

worship at a particular place, but for the benefit of the Methodist Episcopal church in the United States as an aggregate body or sect, to the exclusion of any peculiar rights of property in the land conveyed in such local society or congregation. And if such is the true interpretation to be given the deed, it would plainly stand, for reasons already mentioned, outside of the influence and operation of the statutes. Upon a fuller and more rigid examination of the deed, however, in which I have been much aided by the clear and forcible views presented by Chief Justice Marshall, of Kentucky in announcing the interpretation placed by the Supreme Court of that state on a deed identical in its features with the deed under consideration, see *Gibson* v. *Armstrong,* 7 B. Mon. 481, I have come to the conclusion, that the deed is entitled to be regarded as substantially a conveyance of the property therein mentioned to the uses of the local society ; and that said property is thus placed within the pale of the statutes.

"It is to be observed, as already stated, that the house or place of worship to be erected is to be for the use of the *members* of the Methodist Episcopal church, &c.; and as the members of the local society are necessarily members of the Methodist Episcopal church, in the sense in which the term is used in the deed, it follows that the land is conveyed for the benefit, to some extent at least, of the local society or congregation. It is to be noted further also, that except upon the happening of a certain contingency, the deed contemplates the perpetual use of the property as a place of worship. And it is obvious, from the nature of things, that the usual occupancy of the property, in attending upon the preaching and exhortations of their minister and in meeting for the observance of the various religious duties and exercises enjoined upon its members by the rules of the church, is one that can be enjoyed only by the local society; and that any use or occupancy of the house by other members of the church must be necessarily casual and infrequent ; so

much so as not to interfere with the full use and enjoyment of it as a place of worship by the local members. Hence it is fairly inferable that the former use and not the latter was mainly if not exclusively within the contemplation of the parties to the deed.

1880
Special Term.

Carskadon *et al.*
v.
Torreyson *et al.*

"This view is made still more apparent in the subsequent declaration of the trusts. The deed proceeds to provide further, that in case one or more of the trustees die or cease to be a member of the said church, the stationed minister or preacher who shall have the pastoral charge *of the* members of the said church, (meaning plainly the society), is to call a meeting of the remaining trustees, who, upon his nomination, are to appoint one or more persons, who shall have been one year a member or members of said church, to fill such vacancy; showing that the minister provided for in the deed is to have charge of the members of the local society; who consequently are expected to attend upon and receive his religious instructions and ministrations; and who are thus necessarily the members that are, peculiarly, to enjoy the occupancy of the house as a place of worship. And in the next and last clause, in which, upon a certain contingency, provision is made for the sale of the property for the discharge of debts incurred by the trustees on account of the premises, the surplus arising from the sale, after paying the debts, is directed to be placed in the hands of the steward *of the society* attending divine service on the premises, and is to be disposed of by the next conference, according to the best of their judgment, for the use of *said society*.

"Does not this provision strongly persuade to the conclusion of a design that, in the event no sale of the property is ever required, or until it is required, the immediate control and peculiar use of the property is to be and remain with the local society, by the contributions of whose members, in the main, (as is stated in the bill, and not denied in the answer,) the church-house was erected, and to whose use the surplus proceeds of the

property, in the event of a sale, are to be appropriated. " 'The primary object of the whole transaction,' (in the language of Chief Justice Marshall in the case before cited,) ' must necessarily have been to provide and secure a place of worship according to the Methodist Episcopal discipline for the local society of that denomination, by and for which contributions were made, and which was expected to attend worship on the premises. The members of the Methodist Episcopal church at large, not belonging to the local society, can, in a general view have no other use of the local premises, but through the instrumentality of the local society, and by means of the subordination of the local use to the laws and authority of the church at large.' "

In the thirty-second section of the fourth article of the Constitution of Virginia of 1851, it is declared, that the general assembly may secure the title to church-property to an extent to be limited by law ; whilst an additional guard against the dangers adverted to is thrown around the subject by a provision, that there shall not be any grants of charters of incorporation to any church or religious denomination.

In the case of *Venable et al.* v. *Coffman et al.*, 2 W. Va. 310, the deed was dated in 1851, conveying to the trustees of the Methodist Episcopal church in Lewisburg, and their successors in office, two certain lots, known as numbers sixty-two and sixty-four, on which was erected a brick house of worship, for the use of the minister and members of the Methodist Episcopal church, &c.

In the case of *Seaburn's ex'r* v. *Seaburn et al.*, decided by the Court of Appeals of Virginia in 1859, 15 Gratt. 423, it was held : " 2. The act, Code, ch. 77, § 8, p. 362, does not authorize a *devise* of land for the ʃuse of a religious congregation, but only a conveyance by deed. 3. *A fortiori* the act does not authorize a bequest of money to be expended in building a church at a specified place, or for the support of the pastor of the said

church." In this case Judge Moncure, in deliver-
ing the opinion of a majority of the court, at page 432,
said :

" Under these circumstances we think we ought not to
apply a very liberal rule of construction to the statute,
but to construe it according to the general rules.  And
so construing it, we think the *conveyance*, by which it
authorizes a transfer of land to be made for the use of a
religious congregation, does not embrace a devise.  We
think the Legislature plainly intended to alter the pre-
existing law, by not authorizing such a transfer of land
by devise in future.  Whether the reason for the alter-
ation was good or not, is a question which it belongs
not to this. court to decide.  We may readily conceive
what the reason was.  And we must admit that the dan-
ger of excessive and inordinate alienation of property
to religious uses, so jealously guarded against by the
policy of our law and the provisions of our Constitution,
before referred to, would be greatly increased by author-
izing such alienation to be made by will as well as by·
deed."

The ninth section of the second article of the Consti-
tution of this State of 1863 among other things declares,
that the Legislature shall not prescribe any religious test
whatever, or confer any peculiar privileges or advanta-
ges on any sect or denomination.   The second section of
article eleven of the same Constitution declares, that no
charter of incorporation shall be granted to any church
or religous denomination, but it provides, that provision
may be made by general laws for securing the title to
church-property, so that it shall be held and used for
the purposes intended.   The fifteenth section of the
third article of the Constitution of this State, ratified in
1872, and which took the place of the Constitution of
1863, declares among other things, that the Legislature
shall not prescribe any religious test whatever or confer
any peculiar privileges or advantages on any sect or
denomination.   And the forty-seventh section of the

1880
Special Term.
_____
Carskadon et al.
v.
Torreyson et al.

sixth article of the same Constitution declares, that no charter of incorporation shall be granted to any church or religious denomination, but provides, that provision may be made by general laws for securing the title to church-property, and for the sale and transfer thereof, so that it shall be held, used or transferred for the purposes of said church or religious denomination.

As we have seen, the deed in question in the case at bar is dated the 8th of September, 1856, and is between Angus W. McDonald and Cornelia, his wife, and Arnold S. Trowbridge, of the county of Hampshire, and State of Virginia, of the one part, and nine persons, named in the deed, trustees of the Methodist Episcopal church in *South Branch circuit*, Baltimore annual conference, appointed by the circuit court of Hampshire county at September term, 1856, upon the application of the Rev. Thomas Hildebrand, preacher in charge of said circuit, of the second part. The deed recites, that the said Angus W. McDonald, for the consideration of the sum of $300.00, contracted to sell and convey with general warranty to the said Arnold S. Trowbridge, his heirs or assigns, two certain lots in the town of Romney, containing each a half an acre of ground, which consideration the said Angus W. McDonald acknowledges to have been paid by the said Arnold S. Trowbridge. And the deed then further recites, that the said Trowbridge had erected a brick dwelling-house and other improvements on said two lots, which are known and distinguished in the plat of said town of Romney by the numbers twenty-three and twenty-four, had sold to the said parties of the second part and their successors in office the said two lots with their appurtenances for the sum of $1,790.00, the receipt whereof he acknowledges. The deed then further proceeds to declare, that therefore this deed witnesseth, that the parties of the first part for and in consideration of the premises and for the further consideration of $1.00 to them in hand paid by the said parties of the second part at or before the sealing and delivery of the deed, the re-

ceipt whereof is acknowledged, have granted, bargained

and sold, &c., and by these presents do grant, &c., unto the parties of the second part, trustees as aforesaid, and their successors in office the said two lots of land situated as aforesaid in the said town of Romney, &c., to have and to hold unto the said parties of the second part and their successors in office forever, in trust nevertheless, that they shall hold the same, and cause the building to be put and kept in repair as *a parsonage or place of residence for the use of the ministers or preachers of the Methodist Episcopal church in the United States of America according to the rules and discipline, which from time to time may be agreed upon and adopted by the ministers and preachers of said church at their general conference in the United States of America,* and in further trust and confidence, that they shall at all times forever thereafter *permit such ministers and preachers belonging to said church, as shall from time to time be duly authorized by the general conferences of the ministers and preachers of said Methodist Episcopal church, or shall by the annual conferences authorized by the said general conference, be from time to time stationed on the circuit, within the bounds of which said house and lots are situated, to use and occupy said house and lots as a parsonage or place of residence.* The deed then further declares, that in case the general conference of said church shall make such change in the discipline or constitution of said church at any time thereafter, as shall render it *necessary* or *expedient* for the annual conference, within the bounds of which said lots are situate, to separate from said general conference, then said lots are to be held for the use of the ministers or preachers sent by said annual conference to the circuit, within the bounds of which said parsonage is situated. And the deed then further proceeds to declare in further trust and confidence, that as often as any one or more of the said trustees shall die or cease to be a member of said church, according to the rules and discipline of the general conference, of which the annual conference, within whose

1880
Special Term.

Carskadon *et al.*
v.
Torreyson *et al.*

bounds said parsonage is situated belongs, then and in such case it shall be the duty of the stationed *minister or preacher, who shall have the pastoral charge of the members of the said church,* to call a meeting of the remaining trustees, as soon as conveniently may be, and when so met, the minister or preacher shall proceed to nominate one or more persons to fill the place or places of him or them, whose office or offices has or have been vacated as aforesaid, provided the person or persons so nominated shall have been one year a member or members of the said church immediately preceding such nomination, and be at least twenty-one years of age; and the said trustees so assembled shall proceed to elect, and by a majority of votes appoint the person or persons so nominated to fill such vacancy or vacancies, in order to keep up the number of nine trustees forever; and in the case of an equal number of votes for and against the said nomination, the stationed minister or preacher shall have the casting vote.

Now I think it is manifest, that the said deed attempts to create the following trusts and uses: First—That the trustees shall hold the lots conveyed and cause to be kept in repair as a parsonage or residence therein for the use of the ministers or preachers of the Methodist Episcopal church, in the United States of America, according to the rules and discipline, which shall be from time to time agreed upon and adopted by said ministers or preachers of said church at their said conference. Second—That the said trustees shall at all times forever thereafter permit such ministers and preachers belonging to said church, as shall from time to time be duly authorized by said general conference of said church, or shall by the annual conferences authorized by the said general conference be from time to time stationed on the circuit of said church, within the bounds of which said house and lots are situated, to use and occupy said house and lots as a parsonage or place of residence. Third—But if the said general conference

shall thereafter make such change in the discipline or constitution of said church at any time thereafter, as shall render it necessary or expedient for the annual conference, within the bounds of which said lots are situated, to separate from said general conference, then the said lots shall be held for the use of the ministers or preachers sent by such annual conference to the circuit of such annual conference, within the bounds of which said parsonage is situated; and Fourth and last—That as often as vacancies occur caused by the death of any of the trustees or by any ot them ceasing to be a member of said church according to the rules and discipline of said general conference, of which the annual conference within whose bounds said parsonage shall be situated belongs, then and in such case, it shall be the duty of the stationed minister or preacher, having the pastoral charge of the members of such church, to call a meeting of the remaining trustees as soon as conveniently might be, and when so met, such minister or preacher shall proceed to renominate one or more persons to fill such vacancy or vacancies, &c., as stated in the said deed.

It seems to me that it cannot be successfully maintained upon authority or principle, that the first trust or use attempted to be created by said deed is for the peculiar use of any local religious congregation at or near the property conveyed as a residence for a minister, or that in fact it is for the use of any congregation of the Methodist Episcopal church as distinguished from any other or others, at least within the South Branch circuit of said church, if it could be confined to that circuit. In fact there is nothing in the clause specifying this trust or use designating any *cestui que trust* or *use*, such as is mentioned and contemplated by the statute. And the trust or use therein prescribed is not within the influence or purview of the statute. This trust or use not being covered by the statute is so vague and indefinite as to be inoperative and of no effect under the decisions, to which I have referred. Bearing the fact in mind, that the deed

*1880*
*Special Term.*

Carskadon *et al.*
v.
Torreyson *et al.*

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.
was made to the parties therein named as trustees of the South Branch circuit of said church, and considering the said first trust or use in connection with the second trust or use, the said second trust or use is for a place of residence for the minister who shall be assigned by the proper authority from time to time in charge of said circuit or the circuit within whose bounds the property shall be situated. While the members of the Methodist Episcopal church within the bounds of the circuit, in which the property conveyed might, be situated might derive in some way a benefit from the said second trust or use, still, I apprehend, it cannot successfully be maintained upon any fair construction of the statute or decision of the Court of Appeals of Virginia or of this State, that such a trust or use is within the purview of the statute relating to the subject under consideration.

We see from the evidence in the cause, that a circuit of said church is not necessarily permanent in its boundaries—that the boundary of a circuit may be changed by the proper authority of the said Methodist Episcopal church from time to time, as such authority may deem it expedient and proper so to do. Thus by the exercise of such authority, which, we see, has been done in this case to a considerable extent, there is not permanence in the boundaries of a circuit of said church. The property conveyed may one year be within the boundaries of one circuit, and the next or perhaps sooner within another. In fact it might one year be in the north end of one circuit, and the next in the south end of another. Stations may be carved out of circuits by the proper church authority, &c.

Do the members of the Methodist Episcopal church within the bounds of a circuit of said Methodist Episcopal church constitute a congregation within the purview and meaning of the statutes bearing upon the subject? and can it fairly and properly be so held by a court, whose province is to ascertain and declare what the law is, and not to make the law? I answer, under the

authorities and decisions which prevail with us, in the
negative. When a conveyance is made for the use of a
a religious congregation of the Methodist Episcopal
church, worshipping at or near any designated place, of
land as a residence for a minister, then the statute makes
the use in that case sufficiently explicit by express pro-
vision. The statute, as we have seen, contemplates a
local congregation. It appears that within the South
Branch circuit there are several distinct congregations
of the Methodist Episcopal church worshipping at as
many different places; and I feel authorized to infer
from what appears in the cause, that at the date of said
deed there were within said circuit several distinct con-
gregations in charge of the minister assigned or stationed
upon said circuit by the authorities of the said church.
I see no reason to conclude, that the phrase "any re-
ligious congregation," used in the first line of the sev-
enty-seventh chapter of said Code of Virginia should
have attached to it any less extensive meaning than the
same phrase employed in the fourth line of the eighth
section of the same chapter. Can it be contended, with
any reasonable plausibility, that a member of any one of
the several congregations of the Methodist Episcopal
church, within the bounds of the South Branch circuit
of said church, could maintain a suit in the circuit court,
or any other court in the State, under the provisions of
said thirteenth section of said chapter seventy-seven of
the said Code of Virginia, for the sale of said lots, upon
the ground that the whole membership of said church, or
the several congregations of said church, within the
bounds of the circuit of said church, in which said lots
are situated, constitutes a religious congregation within
the meaning of said statutes? To my mind the answer
is clearly but one, and that is in the negative.

The counsel for the appellees filed with the cause at
the time of the hearing thereof before this court, what
purports to be the opinion of Judge Parker, late judge of
the Winchester circuit court, of Virginia, rendered in

1880
Special Term.

Carskadon et al.
v.
Torreyson et al.

what is called a Methodist church case, it being the case of *Anderson & Bowers* v. *Nulton et al.*, and the said counsel asked us to read and consider it for what it was worth, in considering the case at bar. From said opinion it appears, that both the contending parties claimed the property in dispute under a deed made on the 18th day of June, 1863, by David W. Barton, a special commissioner of sale, to Abraham Nulton and the other trustees, " in trust for the use and benefit of the congregation of the Methodist Episcopal church in Winchester and its vicinity." In his opinion in print, as it is before us, the judge says :

" Clearly the contributors acquired no legal or equitable right of property in the church-building; the congregation designated in the deed became the only beneficiaries. Nor could the individual members of the congregation acquire any separate individual property therin. This appertained to the congregation alone, however much it might change and fluctuate. The grant is not and could not be to the Methodist Episcopal church, meaning thereby the church at large ; but it is to the local society or particular congregation. Our law is plain and explicit on this. It permits and protects such a grant to a local congregation, whilst it utterly prohibits an attempt to confer property upon an establishment like the Methodist Episcopal church."

If this opinion were authority for this Court, and if it tends to prove anything, it is, that the second as well as the first trust or use created in said deed, or attempted to be created, is not authorized by the statute. But Judge Parker in his said opinion in fact follows, as far as he goes, to a great extent the principles announced on this subject in the case of *Brooke et al.* v. *Shacklett*, 13 Gratt.

The said third trust or use is conditional in one respect, as is clearly seen, and is subject to the same fatal objections as the second, as is manifest upon its face. It does not in any respect tend to aid the preceding trusts

or uses, but in fact in some respects renders the trusts and uses sought to be created by said deed more uncertain, if possible.

In the fourth trust by the words, "stationed minister or preacher, who shall have the pastoral charge of the members of said church," I think is meant, as used in the deed, the minister or preacher assigned by the annual conference to have pastoral charge of the members of the church within the circuit, and does not refer to any particular or local congregation of the church. But this fourth trust is part of the scheme for perpetuating the said preceding trusts, and as they are none of them within the influence or purview of the statute nor valid without the statute, this trust falls with the other specified trusts and uses of the deed.

It does not appear how the money was raised, which the deed recites was paid to the grantor, Trowbridge, for the said house and lots of ground, or from whence it came, any further than is shown by the recitals in the deed. It will be seen that the deed in question in this case contains no provision in case of the sale of the property as to how the proceeds of sale should be applied, as was the case in the *Brooke and Shacklett* case and in the case in 7 B. Monroe above cited. In the case of *Gallego's ex'rs* v. *The Attorney General*, 3 Leigh, Judge Tucker at page 465 says: "There is no principle supposed to be more perfectly settled, in reference to conveyances, than that every deed must have sufficient certainty as to the grantee, who is to take under it. If there is such uncertainty as to the grantee, that it cannot be known distinctly who is to take by the grant, it is *ipso facto* void for that uncertainty." Again on page 466, Judge Tucker says: "There is not more necessity for a properly defined grantee in a deed, than for a *cestui que trust* capable of taking, and so defined and pointed out that the trust will not be void for uncertainty. In short, there cannot be a trust without a *cestui que trust*; and if it cannot be ascertained who the

*cestui que trust* is, it is the same thing as if there was none. These principles, it is confidently believed, are the general principles of the common law upon the subject."

Again at page 467 the same learned judge says: "A diligent search has led me to the conclusion, that there was no case at common law, in which a bequest or a trust of this *indefinite* character could be supported; and the learned counsel on both sides have acknowledged that they have been unable to discover any case anterior to the statute of 43 *Elizabeth*, in which the validity of such bequests or trusts has been distinctly recognized by the courts."

Of course I feel it my duty to enforce the statutes heretofore passed by the Legislature, or that may be hereafter passed by the Legisture, which are within the constitutional powers of the Legislature, in relation to church-property. And I feel disposed, in construing *such* acts of the Legislature upon that subject, to give full effect to the intent of the Legislature. But at the same time I feel it to be my duty to keep within the clearly indicated intent of the Legislature, and not to go beyond it. If the Legislature, in representing the sentiments of the people, desires to proceed further than it has heretofore gone, and does so within constitutional limits, it will be my duty to aid in its enforcement, which duty will be faithfully performed to the best of my judgment.

After a patient examination of the deed under consideration in this case, in all its parts, and the authorities bearing upon the said four trusts or uses therein specified, which I have hereinbefore stated and indicated, and after having patiently and elaborately considered the same, I am of opinion that none of said trusts come within the influence or purview of the statute, and that, because of their vagueness and indefiniteness as to the *cestui que trust* or *cestuis que trust* therein referred to the same are under the law, as it is with us, inoperative and in effect void. And that therefore no trustees, as to

said lots of land, could be appointed by the circuit court of the county of Hampshire, or the circuit court of the county of Mineral, as was done by each of said courts, under the provisions of the ninth section of said chapter seventy-seven of the Code of Virginia of 1860, or the second section of the fifty-seventh chapter of the Code of this State of 1868. The Legislature of this State passed an act amending the said fifty-seventh chapter of the Code of this State of 1868, which was approved the 2d day of April, 1873. See Acts of 1872-73, commencing on page 208. This act makes changes in the said fifty-seventh chapter of the Code and the first section thereof as well as other sections thereof. And among other things it may have been intended to cure some defects existing in some deeds made prior to the date of the act, and perhaps it may have that effect in some cases. But this act has not been relied on by counsel before us in argument or in their briefs as curing or validating the said trusts specified in the deed in question in this case, so far as now recollected. But if it had been so relied on, whatever may be its curative effects upon the trusts or uses contained in other deeds unlike the one in question, it seems to me for obvious reasons, that it cannot fairly or justly be construed to have the effect of curing or validating the trusts or uses specified in this deed.

If land is conveyed for the use and benefit of the Methodist Episcopal church for a place of public worship, then the local congregation or society may be readily ascertained and determined. But if conveyed for the use and benefit of the Methodist Episcopal church simply for a residence for a minister or for its ministers without locality in the deed as to the place of the church, then in would be difficult, if not impossible, in many cases to ascertain and determine satisfactorily, which is the local society or congregation; as, for instance, in a city or town, in which there are several distinct societies or congregations of the Methodist Episcopal church.

1880
Special Term.

Carskadon *et al.*
v.
Torreyson *et al.*

Other instances of difficulty might be easily given, but I deem it unnecessary. But the trusts or uses specified in the deed in question are not mentioned in the said act. There is no such *cestui que trust* or use mentioned in this deed as those specified in said act, as may be readily seen by comparison. I am now speaking of the said act of 1873.

The plaintiffs' bill was filed in this case as, is obvious from its contents, upon the supposition that the trusts specified in said deed were operative and valid and enforcible in a court of equity, and the manifest object of the bill is in effect to carry out the said trusts or uses, and not for the purpose of removing a cloud upon the title of the plaintiffs and the other original trustees or any of them. The proceeding of the circuit court of the county of Hampshire in appointing trustees of the property conveyed by said deed on the application of Rev. Mr. Torreyson was altogether *ex parte*, and as the said trusts specified in said deed were inoperative and in effect void upon their face from the beginning, for the reasons aforesaid, the appointment of trustees in that proceeding to fill supposed vacancies in place of a part of the persons in the deed mentioned could not and did not confer any right or title in the persons so appointed by the court to the property conveyed. Several other errors were assigned and discussed by counsel before us at the hearing, but under the view I have taken of the case they have become immaterial and therefore do not fairly arise or pertain to the case; and I therefore deem it unnecessary and improper to express any opinion touching the same.

The said trusts specified in said deed being inoperative and in effect void from the beginning, as hereinbefore determined, is the deed void at law as a grant of the property to the persons therein named, it (the deed) appearing to have been made to said persons for valuable consideration and being a deed of general warranty? Under the view I take of this case it is not necessary or perhaps proper now to pass an opinion upon that ques-

Syllabus 2.

tion, as persons interested therein are not before the court, and that question has not been very elaborately argued before us.

As before stated, it does not appear in the case distinctly with whose money the said house and lots were purchased of Trowbridge and paid for, whether it was the money of the persons named in the deed as trustees, or the money of other persons. If it was the money of other persons, it is not necessary now to consider the question, whether, as the trusts specified in said deed are inoperative and in effect void for the reasons aforesaid, the persons, whose money paid for the property, have the equitable right to claim the property, or have a resulting trust against the said property in the hands of the persons named in said deed, as trustees, who are living, and the heirs of those, who are dead, as that question does not arise in this case.

For the foregoing reasons there is error in the said decree of the circuit court of Mineral county, rendered in this cause on the 24th day of December, 1870; and the whole of said decree must therefore be reversed and annulled, and the appellants must recover against the appellees, James Carskadon, Isaac H. Carskadon, Henry Trout and Enos Everett, their costs about the prosecution of their appeal in this cause expended. And this Court proceeding to render such decree in this the said cause of James Carskadon and others against Charles L. Torreyson and others, as the circuit court of the county of Mineral ought to have rendered, it is adjudged, ordered and decreed, that the injunction heretofore awarded in this cause be dissolved, and that the plaintiffs' bill filed in the cause be dismissed, but without costs. But this dismissal is without prejudice to any suit or proceedings at law or equity, which the plaintiffs, or any of them may be advised to hereafter bring against the defendants or any of them, or any other person, with a view to quiet the title to the house and lots in the bill mentioned, or to recover the possession of said property, or to try the va-

1880
Special Term.
———————
Carskadon *et al.*
v.
Torreyson *et al.*
lidity of the said deed in the bill mentioned as a simple deed of conveyance of the property therein mentioned absolutely to the person therein named or for any other purpose, except the enforcement of specific trusts specified in said deed. And it is further adjudged, ordered and decreed, that the petition of Rev. George Crossfield for the appointment of trustees in the room of former trustees be and the same is hereby dismissed, but without costs.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.